# CHARLESTON.

## STATE v. STOWERS.

Submitted June 4, 1909.    Decided November 9, 1909.

1. CRIMINAL LAW—*New Trial—Newly Discovered Evidence—Cumulative.*

    Newly discovered evidence as a ground for new trial, must not be merely corroborative, but material and such as will call for a different verdict.    (p. 199).

2. SAME—*New Trial—Newly Discovered Evidence—Affidavits.*

    Upon a motion for a new trial on new oral evidence the affidavit must state the evidence, and by what person it can be proven, and the affidavit of such person that he will give such evidence, stating it, must be produced, or good excuse given for its absence.    (p. 201).

3. SAME—*New Trial—Newly Discovered Evidence—Diligence.*

    Upon a motion for a new trial for new evidence, it is not enough for a prisoner to say that he did not know before the trial that he could prove such matters; but he must show the exercise of diligence in some proper way fitting the case to ascertain such matters.    (p. 201).

4. SAME—*Review—Questions of Fact.*

    The general rule is that a new trial will not be granted a prisoner where the verdict against him involves conflicting oral testimony and credit of witnesses.    (p. 203).

Error to Circuit Court, Lincoln County.

Henry Stowers was convicted of maliciously shooting another, and he brings error.

*Affirmed.*

*Wilkinson & Hager* and *B. H. Oxley,* for plaintiff in error.

*William G. Conley, Attorney General,* for the State.

BRANNON, JUDGE.

Henry Stowers was sentenced to the penitentiary for five years for the malicious shooting of a woman named Josie Whitten in Lincoln county. He complains of certain instructions given for the state and refusal of instructions asked by him. We have carefully gone over these instructions and find no error in respect to them. It cannot be necessary to cum-

ber the reports by inserting and considering these sixteen instructions, as they do not involve any legal principles not old and settled.

Another complaint, one scarcely deserving mention.    It is that the prosecuting attorney in addressing the jury said that "if the jury find in favor of the state according to instruction No. 1 given the jury at the instance of the state, such finding would eliminate from their consideration all other instructions." That was a correct statement.    That instruction told the jury that if it should find from all the evidence, beyond a reasonable doubt, that the prisoner shot and wounded Josie Whitten because she refused to commit adultry with him, or from other motive, without fault on her part, then the jury should find the prisoner guilty as charged.    The sole question of the case was whether Stowers did the shooting, or whether he was absent from the place where it occurred, his defense being an *alibi*.    If he did the act, there was nothing else in the case to consider.    But if this were not so, another answer is, that the court told the jury that the attorney's statement was only used in argument, and that it was the duty of the jury to consider all the instructions, thus   denying the attorney's statement, and purging the statement of all harm.    *State* v. *Chisnell,* 36 W. Va. 659.    Remarks must be hurtful.    *State* v. *Shawn,* 40 W. Va. 1.

Another complaint is, that the court refused a new trial for after discovered evidence.    New trials are rarely granted for this cause, and always with reluctance, and under special circumstances.    *Brown* v. *Speyers,* 20 Grat. 296.    The defendant's affidavit says that he had discovered that the State's witness, Josie Whitten, stated that another person than the prisoner, naming him, had shot her.    The affidavit is fatally defective.    It does not even name the person expected to prove this, or say even that any person told the prisoner so, or name any person to whom the expected witness so stated.    This gives no assurance that any such witness could or would be produced.    The law says that the affidavit of the witness stating what he will prove, must be produced.    Affidavit of a party is not sufficient.    *Strader* v. *Golf,* 6 W. Va. 258; *Brown* v. *Speyers,* 20 Grat. 296; *Hale* v. *Pack,* 10 W. Va. 43.    Moreover, this evidence would be used only to impeach a witness,

and that newly discovered evidence cannot get a new trial in such case is settled by many cases.. *State v. Williams,* 14 .W. Va. 851; *Warehouse Co. v. Pridemore,* 55 *Id.* 451; 10 Va. & W. Va. Digest 450.

The affidavit further says, that Evan Carper the evening before the shooting counted the money in Josie Whitten's pocket book, and again next morning after the shooting at night, and she had two dollars more, and found her pocket book on the floor. What the object of this? What is it forceful to prove? I suppose it is claimed that somebody had given her money the night she was shot, and then shot her. Why? The decisions in great number say the new evidence must be material, and not merely cumulative, and such as ought to produce another verdict.. Surely the matter does not come up to this standard. *State v. Betsall,* 11 W. Va. 703; 10 Va. & W. Va. Digest 449; *State v. Lane,* 44 W. Va. 730.

The affidavit also states that Carper discovered on the floor next morning after the shooting vomit smelling of whiskey, resembling food called chicken and dumpling, vomited by some one, and that Carper had eaten dinner at Josie Whitten's on the day of the shooting, and that she had prepared a large quantity of that food, and that there was a large quantity left. What does this import? Does it hint that somebody else did the shooting? Would not a jury say that the woman, sickened by the shot, vomited? How can we say with certainty what it means? Where its materiality? Would it, could it, possibly change the verdict?

And as to the Carper evidence, why not have proven those things when he was on the stand in the trial? No diligence was shown in this matter. He lived in the neighborhood, close to Josie Whitten. The law requires diligence. He was examined as to the appearance of the room, but revealed nothing of this matter. This renders it suspicious. And why not produce Carper's affidavit that he would swear these immaterial, inconclusive things, as demanded by law above cited?

This affidavit further says that one of the bullets shot in Josie Whitten's house had been located to have struck a joist and the upper floor in a place to show that the shots were fired in the back part of the house beyond the middle from a point in the cabin different from where Josie Whitten located

Stowers in her evidence. Now, first, who would so prove the bullet in the joist? The affidavit does not. tell, but must do so under law above cited. It does not even point to the person to give such evidence, and is only the bald statement of Stowers, and does not say he could so state. And, second, why could not the fact have been found out before the trial? Stowers shows no effort to find this out; only says he did not know of these facts or learn that he could prove them before the trial. It will not do to say that he did not know of the testimony; it must also appear that he used diligence to discover it. Could some one not have discovered the hole in the joist? Why not? *Snider* v. *Myers,* 3. W. Va. 195; *State* v. *Betsall,* 11 W. Va. 703; *Brown* v. *Speyers,* 20 Grat. 296; *Varner* v. *Core,* 20 W. Va. 472. Late case *Stewart* v. *Doak,* 58 W. Va. 172. A verdict will not be set aside for new evidence on such trivial grounds. Only under special circumstances, when justice demands it, will the discovery of evidence during or after trial, constitute a reason for setting the verdict aside, this Court said in 6 W. Va., p. 271, citing *Nichols* v. *Jones,* 8 Grat. 267. This affidavit is wholly insufficient. I should have simply said so, and not discussed it. For myself I make the remark that we, including myself, go on filling volume after volume rewriting old and settled law questioned by nobody.

We are asked to grant a new trial on the ground that the verdict is contrary to the weight of evidence. Here again we meet old law and go over it again uselessly. Josie Whitten swore that on the night she was shot Stowers was the only man in the house save her husband lying in bed almost deaf, blind, helpless, and her little deaf and dumb boy. Her husband says that at the moment before the shooting Josie told him in Stowers' presence that man was Stowers. This is part of the *res gestae* and evidence. She swears most positively that she talked with Stowers at the wood fire face to face, and knew him well. Her evidence is that Stowers shot her. She instantly lost consciousness. The defense was an *alibi.* Here is purely a question of fact resting on oral evidence absolutely conflicting on the very kernel of the case. In behalf of the verdict I will say that the *alibi* is wholly dependent on the evidence of the prisoner, his wife and three children, the

oldest seventeen, one thirteen, the other younger, and Hale, who, as Josie Whitten says, was with Stowers on that night; came drunk into her house, was put out of it by her, and as he went out Stowers came in, and Hale is under indictment as an accomplice in the crime. All these witnesses may be biased under the strongest inducements moved by human nature to falsify. Another witness, Tully, supports the *alibi*. He seems to be a friend, associate and chum of Stowers, so far as the evidence tends to show. It is further to be considered that Stowers and Hale soon disappeared, going to Charleston, staying, as Stowers says, one night, or maybe part of the night, and taking a train to Ronceverte, Greenbrier county, staying there two days, returning to Charleston, staying a day or so, then going back to Lincoln county, not going to his own home, but going to an uncle's one night, staying till next evening, then going to Esteps, staying over night till next evening, then going to his father's in Putnam county, staying a few minutes, then going to Milton, to the home of a sister, staying six days, then back to Lincoln county going to his home, not staying long, not a night, then to his brothers, then to home of John Thomas, staying there some days, staying about the farm in day time, going to the house only to meals and to sleep, and staying in the woods some times. This by his own statement. After thus wandering hundreds of miles, from place to place, one place two hundred miles from home, he gave himself up to the officers of the law. Shall we discuss at length the fixed law of new trial stated by innumerable cases given in 10 Va. & W. Va. Digest, 457-8? "An appellate court cannot set aside a verdict, which the court below refused, if there be sufficient evidence to justify the verdict after rejecting all parol evidence in conflict with such evidence, offered by the party against whom the verdict was rendered." *Smith* v. *Townsend*, 21 W. Va. 486. So in *State* v. *Lane*, 44 W. Va. 730; *State* v. *Baker*, 33 *Id*. 319, 336; *State* v. *Flanagan*, 26 *Id*. 116. This Court has held that "where all the evidence of the prisoner is in conflict with the State's evidence, so that it is impossible that both can be true, the appellate court will reject all the evidence of the prisoner, and look only to that of the State." *State* v. *Thompson*, 21 W. Va. 741 Such was the fixed rule before Act of 1891, Code of 1891,

chapter 131, section 9, Code 1906, section 3979. The former law excluded the prisoner's conflicting evidence. I do not say that since that act a court can refuse to consider the prisoner's evidence; but I do say that the former appellate action on such evidence is still a guide and sheds light on the duty now of this Court as to such evidence. As said in *Johnson* v. *Burns,* 39 W. Va. 658, it does not tell this Court what weight it should give such evidence; it does not give it credit; it does not disrobe a jury of the essential power to pass on the credibility of witnesses. So again said in *Buck* v. *Neuberry,* 55 W. Va. 681. To-day the rule is emphatic that generally an appellate court will not set aside verdicts vitally involving conflicting evidence involving credit of witnesses. Such the general rule with few exceptions. *Fulton* v. *Crosby-Beckly Co.,* 57 W. Va. 91; *Gilmer* v. *Sydenstricker,* 42 *Id.* 52. In the late case of *Coalmer* v. *Barret,* 61 W. Va. 237, this Court held that though this Court may grant a new trial in a case of conflicting evidence, yet a verdict depending solely on conflicting oral evidence in the presence of the jury will not be set aside on the ground alone that the verdict is plainly against the decided weight and preponderance of the evidence, because to do so would invade the province of the jury in determining the credibility of a witness. The case says that in such case to set aside the verdict the court must go beyond the question of the credibility of the witnesses giving conflicting oral evidence in the presence of the jury, and find documentary evidence, or uncontroverted facts and circumstances, which, when considered with the conflicting evidence, plainly constitute a decided weight and preponderance of evidence against the verdict. In *State* v. *Roberts,* 64 W. Va. 498, we held that in case of malicious shooting, the only question being whether the accused acted in self-defense and the evidence as to it is materially conflicting, the Supreme Court will not grant a new trial. Otherwise what becomes of the rule that the jury is the judge of the credit of witnesses? To set aside a verdict in such a case, approved by a circuit court, would be an abuse of power. Of what force the constitution in its guaranty of a jury trial, if in such case an appellate court can set aside a verdict only because it differs with the jury? If an original question, I would deny the very power of a court to do so. I need not cite law for

the proposition that we cannot destroy the work of a jury and circuit court only because if we had been of the jury we would have found a different verdict. We are not jurors though people often seem to think so. We do not see these witnesses face to face to judge of their demeanor and credit. We cannot see them in cold print. It gives us not their eyes, their countenances, their voices, their frankness or its opposite, their personal appearance importing their characters, their demeanor on the stand, their movements and actions, so essential in passing on the credit of witnesses.

That was a cruel act of shooting in the head this poor woman in her lonely cabin in the wilds of Lincoln county, when her husband, deaf and blind, was lying helpless in bed, with no one to defend or save her, when the only other being there was a deaf and dumb child of eight years, the shot rendering her blind for life. If Stowers is guilty his punishment is light. If the law has laid its hands upon the wrong man, it is deeply to be regretted, and may be attributed to human frailty or error. A jury of the prisoner's county have unanimously pointed him out from among all men as the guilty one. We are not to blame. We cannot help him without a sacrifice of fixed law and public safety.

We affirm the judgment.

*Affirmed.*