# CHARLESTON.

## STATE v. LEMON.

Submitted April 15, 1919.   Decided April 22, 1919.

1. CRIMINAL LAW—*Presence of Accused—Presumptions.*

   If the order entered in the trial of a felony shows that the prisoner was set to the bar of the court in custody of the sheriff, it is presumed that his presence continued throughout the entire proceedings of that day. But such presumption is rebuttable, and may be overcome by evidence proving the contrary.   (p. 27).

2. SAME—*Presence of Accused—Presumption—View of Premises.*

   The statement in the same order that a view of the premises where the crime was committed was ordered, and "thereupon the jury in charge of the sheriff, the judge and clerk of the court viewed the premises," does not overcome such presumption; the prisoner was, presumably, present at the view, notwithstanding the failure of the order to mention his name in connection with the jury and the officers of the court. Nor does the failure of the order to state that, at the conclusion of the day's proceedings, he was remanded to jail in the custody of the sheriff overcome such presumption.   (p. 27).

3. SAME—*New Trial—Grounds—After-Discovered Evidence.*

   In order to support a motion for a new trial on the ground of after-discovered evidence it must appear that such evidence is material, that it is not offered simply to contradict or impeach a witness, and is such as will likely produce a different result on

a re-trial of the case, that it is not simply cumulative and that due diligence was used to discover it before the trial. (p. 29).

4.　SAME—*New Trial—Cross-Examination of Affiant in Support of Motion.*

　Before passing on a motion for a new trial on the ground of after-discovered evidence, the court, or the prosecuting attorney, in the presence of the court and the accused, may cross-examine a person respecting facts concerning which he has made affidavit in support of the motion. (p. 30).

5.　SAME—*Evidence—Motive.*

　While it is permissible to prove the motive which prompted the commission of crime, the failure of the state to discover and prove any motive therefor is no evidence of the innocence of the accused. Motive constitutes no element of the crime itself. (p. 33).

6.　HOMICIDE—*Variance—Name of Deceased.*

　Where the indictment charges the killing of a person identified by a name which he sometimes used and by which he was commonly known, and the evidence shows that such was not his true name, the variance is not material. (p. 34).

7.　CRIMINAL LAW—*Appeal and Error—Sentence for Capital Offense—Remand.*

　Where one, who has been convicted of a capital offense and sentenced to be hanged on a certain day, takes an appeal and, pending the appeal, the time fixed for his execution has passed, this court, on affirming the judgment, will remand the case to the lower court for a reentry of the judgment setting another day for his execution. (p. 34).

Error to Circuit Court, McDowell County.

Ernesto Lemon was convicted of murder in the first degree. The conviction was affirmed on error to the circuit court, and defendant brings error.

*Affirmed and remanded.*

*Strother, Taylor & Taylor,* for plaintiff in error.

*E. T. England,* Attorney General, and *Chas. Ritchie,* Assistant Attorney General, for the State.

WILLIAMS, JUDGE:

Ernesto Lemon was convicted by the criminal court of McDowell county of murder in the first degree and sentenced to be hanged. A writ of error was taken to the circuit court

of said county and, on a review of the case, the judgment was affirmed, and he was then granted a writ of error to this court.

The homicide was committed in deceased's place of business in the town of Welch on Sunday the 11th day of February, 1917, and defendant was indicted and tried at the succeeding April term of the court. On the day the trial began, after some of the witnesses for the State had been examined, on motion of the prosecuting attorney, the court ordered a view of the premises to be taken by the court and jury. Counsel insist that the accused was not present at the view, evidenced, they say, by the failure of the order to state expressly that he was present at that particular stage of the proceedings. That part of the order relating to the view is: "Thereupon the jury in charge of E. V. Crowder, Deputy for S. A. Daniels, Sheriff of McDowell County, together with the Judge of this court and the Clerk viewed the premises and the jury were adjourned over until tomorrow morning at eight o'clock and placed in the keeping of E. V. Crowder and G. W. Cline, deputies for S. A. Daniel, Sheriff of McDowell County, West Virginia."

It is insisted that the omission to mention his name in this connection raises a presumption that he was not present. No evidence was taken in support of the contention. However, in order to correct the apparent inadvertent omission, and while the case was pending in the circuit court on writ of error, the criminal court, on motion of the prosecuting attorney for the State, supported by the affidavits of E. V. Crowder, deputy sheriff, G. L. Counts, prosecuting attorney, W. Burbridge Payne, Clerk, and James French Strother, the judge who presided at the trial, a *nunc pro tunc* order was entered on the 26th day of April, 1918, after due notice thereof was served upon defendant, he being present in court at the time, amending and correcting said order so as to show that the prisoner was in fact present. A copy of said amended order was then certified to the circuit court of McDowell county. To this action of the court defendant objected and excepted. It is contended the court had no authority to enter such order. It is not necessary to a decision

of this case to determine this question, for the reason that it must be presumed, from the original order itself that he was present. It is the only order entered on the 24th of April, 1917, and opens with the following language: "This day came again the State by her attorney and the prisoner, Ernesto Lemon, was again set to the bar of the court in the custody of the sheriff of this county and both parties announced themselves ready for trial." The presumption, therefore, is that the prisoner continued to be present throughout the proceedings of that day, in the absence of any showing in the record to the contrary, and the failure of the order to show, at the conclusion of the day's proceedings, that the prisoner was remanded to jail does not overcome this presumption. *State* v. *Allen,* 45 W. Va. 65; *State* v. *Gibson,* 67 W. Va. 548; and *Cluverius* v. *Commonwealth,* 81 Va. 788. Nor does the failure to include the prisoner's name among the names of the officers of the court and the jury as those who viewed the premises overcome the presumption that he was present, presumably he was in the custody of the sheriff throughout the proceedings of that day, and the order expressly states that the sheriff had charge of the jury during the view of the premises. Presumably he had the custody of the prisoner also at the same time. This is a rebuttable presumption, however, and may be overcome by proper evidence showing the contrary, as was done in *State* v. *McCausland,* 82 W. Va. 525, 96 S. E. 938. There the order showed that the accused, when a view of the premises was taken, left the courthouse with the jury and returned with it after the view was completed. But it was shown by affidavits that he was not present during all the time of the proceeding, that for a short period of the time he had absented himself, being permitted to go to his own house, which was nearby, on some personal errand, and that during his absence certain material evidence was taken. But there is nothing in the present case to overcome the legal presumption.

Counsel for the accused contend that it was improper to examine witnesses outside of the courtroom while the view was being taken. Joe DeBary, a son of deceased, who had

previously testified, was permitted during the view, in answer to questions propounded to him by the court, to point out the place where deceased was sitting when he received the fatal wound, the doors out of which the prisoner ran after he had stabbed deceased and the place where witness himself was sitting when he witnessed it. There was nothing improper in this examination. How, otherwise, were the jury to know the local surroundings and consider them in connection with the testimony of witnesses? The statute, Sec 30, Ch. 116, Code, contemplates the taking of such evidence on the premises by providing, that "the judge shall control the proceedings." We held in the McCausland Case, *supra*, so far as such things viewed by the jury on the premises were pertinent to show anything proper to be proved, they were to be considered by the jury "the same as any other evidence introduced in the case." See the authorities cited in the opinion in that case for this proposition.

It is also insisted that the court erred in overruling the prisoner's motion for a new trial on the ground of after-discovered evidence. The affidavits in support of this motion are utterly insufficient. The prisoner testified that during the day of the homicide he had been drinking a mixture of whiskey and cider, that he had bought the cider from the wife of deceased, that at that time deceased was not at home but came home later, that in the evening he bought from him a quart of cider for which he charged him forty cents, that he then told deceased that his wife had charged him only thirty-five cents a quart and deceased replied that his wife didn't know what the cider had cost. Mrs. DeBary, on her cross-examination, denied having or selling any cider. The affidavit of Louie Laurie was filed for the purpose of showing that, just before the trial, when he and other witnesses were being questioned by the prosecuting attorney in the witness room to ascertain what they knew concerning the case, and when he started to tell about taking a drink of cider with the prisoner sometime during the day on which the homicide occurred, Mrs. DeBary, who was also present, spoke to him in the Italian language and told him to "deny everything about the cider," and for that reason he did not say anything

about it when he was on the witness stand. The affiant further states that he saw the prisoner several times on that day, that he was drinking most all day and when he saw him last, about eight o'clock in the evening, he was so much intoxicated he could not walk straight. The affidavit of M. S. Taylor, the attorney who defended the prisoner, states that he did not learn of the fact that Mrs. DeBary had sold cider until after the verdict, that previous to the trial he had a consultation with Louie Laurie, and in the consultation said Laurie did not divulge that fact. This evidence is wholly immaterial. It is offered only for the purpose of contradicting a witness for the State in regard to an immaterial fact. Whether Mrs. DeBary sold cider to the accused or not, can have no bearing upon the issue of his guilt or innocence. After-discovered evidence, offered simply to contradict or impeach a witness, will not warrant the granting of a new trial. *Wadkins* v. *Digman,* 82 W. Va. 623, 96 S. E. 1016; *State* v. *Stowers,* 66 W. Va. 198; and *State* v. *Williams,* 14 W. Va. 851.

The rule respecting what is necessary to be shown in order to entitle a party to a new trial on the ground of after-discovered evidence has been so frequently stated by this court that we deem it hardly necessary to repeat it here. It will be found fully stated in the following cases: *Phenix Fire Ins. Co.* v. *Virginia-Western Power Co.,* 81 W. Va. 298, (Syl. Pt. 11); and *Halstead* v. *Horton,* 38 W. Va. 727. The affidavit of James Rice is to the same effect. The affidavit of L. B. Colley stated in effect that on the day of the homicide he saw the prisoner in DeBary's store, that he was very drunk and seemed to be half crazy and judging from his actions affiant thought he was unbalanced. But a cross-examination of this affiant, conducted in court in the presence of the accused, reveals the fact that he only supposed the prisoner was either drunk or crazy from the way he acted on the evening of the homicide, that he did not see him take a drink and did not know he was drunk. This evidence is only cumulative in character. For defendant testified in his own behalf and stated that he was drinking on that day and that the happiest moment of his life was when he was drink-

ing.  He remembers taking supper with deceased that even-
ing, and says he and deceased had trouble over the price
of a quart of cider and that deceased struck him in the face
and told him to go out and not come back, that after de-
ceased struck him deceased turned around and went to his
desk and he followed him, and, quoting his exact words, "I
go against him and hit him and I run.  I got scared.  Q.
What did you hit him with?  A. I don't know what hit
him with.  Q. What did you hit him with,—knife?  A. Yes
sir; with my knife."  When asked why he ran he said:
"Cause that man was at the desk and I think maybe he get
pistol and shoot me; I was scared of him."  The only other
witnesses for defendant were examined for the purpose of
proving his good reputation as a peaceable and orderly cit-
izen.  There is no evidence that he had ever previosuly com-
mitted any crime or been engaged in any disorderly conduct;
nor does he attempt to prove that on this occasion he was
so far intoxicated as not to know and appreciate the nature
of his acts.  Even though he was drinking defendant may
not have been so far intoxicated as to exclude the intent to
commit first degree murder.  1 Bishop on Crim. Law,
Sec. 410.

At his request the court gave the jury the following in-
struction on the effect of his intoxication as a defense:  "The
Court instructs the jury that though they may believe from
the evidence in this case that the defendant, Ernesto Lemon,
killed L. D. Bary without any provocation and through reck-
less wickedness of the heart, but at the time he did the act,
his condition from intoxication was such as to render him
incapable of doing a wilful, deliberate and premeditated act,
they cannot find him guilty of murder in the first degree."
It must therefore be inferred that the jury gave proper con-
sideration to all the evidence bearing on the degree of de-
fendant's intoxication and whether or not he was then in
such state of mind as to form an intent.  The testimony of
affiant Colley, if it had been taken at the trial, would have
been only cumulative, being of the same character as de-
fendant's own testimony respecting his intoxication, and

is not such as would have likely produced a different result and, therefore, shows no ground for granting a new trial.

Defendant is an Italian, not having a good command of the English language, but his answers clearly show that he remembered all that took place. He admits striking deceased once with a knife; it was exhibited to the jury and shown to be a dirk. He had it on his person when he came to the store, hours before the homicide occurred, and said he carried it for self defense, because he often went home late at night and feared somebody might rob him. He also admits running out of the house, after he stabbed deceased, and that he passed through two doors to get out on the street, but says he does not remember whether they were open or closed when he started to run out, but does remember that he did not stop to close them as he ran out. He remembers also that deceased was at his desk when he struck him with the knife, but says he does not remember whether deceased was then sitting or standing. On the other hand, four or five witnesses for the State, who were present in the store and saw what occurred, testify that defendant walked up to the deceased, who was then at his desk writing, and asked him to look him in the face, that deceased told him to go away that he had to attend to his business, that defendant then went away and was gone three or four minutes and came back, leaving the doors open, and walked close up to the desk, stabbed deceased and immediately ran out through the open doors and down the street, and was pursued by deceased, his son Joe and witness Ciafardini, for some distance, and was arrested by officer Mitchell, who, when hailed to by the pursuers, told him to throw down his knife or he would shoot him, which command defendant obeyed. While in pursuit of defendant deceased fell, exhausted, and was taken immediately to the hospital and died shortly afterward. Dr. C. F. Hicks said the wound penetrated through his right lung and deceased died from the effects of the wound. The State's witnesses deny that defendant was struck by the deceased, and say that, when defendant approached deceased at his desk and said something to him, deceased simply told him to go away, he had to attend to his business. If the

State's evidence is true, showing defendant's preparation to make his escape, by leaving the doors open, before stabbing deceased, and his use of the deadly instrument, it shows sufficient deliberation. There is abundant evidence to prove the elements constituting the crime of murder in the first degree. It is not necessary that the intention to kill should exist for any particular length of time before the actual killing in order to show deliberation. 7 Encyc. Dig. Va. & W. Va. Cases, 119. It is argued that no motive is shown for the commission of the crime, that the prisoner and deceased were familiar friends and had been such for a long time. While evidence to prove a motive for the killing is admissible, it is not an essential element of the crime of murder, and there is no duty on the State to prove it. *State* v. *Morgan,* 35 W. Va. 260; *Sutton* v. *Commonwealth,* 85 Va. 128; and *Vaughan* v. *Commonwealth,* 85 Va. 671. According to defendant's own testimony, if the jury gave it credit, his motive was anger toward deceased, and, according to his own admission, he nursed his anger for several minutes, and in the meantime prepared to make sure his escape from the building before striking the fatal blow. This evidence contradicts the theory of counsel that his intoxication was such as to render him incapable of premeditating the crime of murder in the first degree. Malice may be inferred from the use of the deadly instrument without any, or upon very slight provocation. The blow in the face, which defendant said deceased gave him, if it is true, furnished only slight provocation, because he admits it did not knock him down, nor does he say there was any further effort on the part of the deceased to administer any further punishment to him; and the fatal stab was not made immediately in self defense, but defendant took time to deliberate and to prepare the way for his escape. But, according to the testimony of the State's witnesses, there was no provocation whatever for the killing. Defendant may have been insulted by the deceased's remark to him, but that furnished no provocation for any sort of violence.

The giving of instructions on behalf of the State, over the objection of the prisoner, and the court's refusal to give

certain instructions on behalf of the prisoner, are also as-
signed as errors. The only instruction given, complained of
in the brief, is the State's No. 1, defining murder in the first
degree. It correctly states the law and the giving of it was
certainly justified by the evidence.

Defendant's instruction No. 1, to the effect that the jury
should find the defendant not guilty because of the variance
in the name of deceased appearing in the evidence and in the
indictment, was properly refused. The name of deceased ap-
pears in the indictment as "L. D. Bary," whereas the tes-
timony of Mrs. DeBary shows that his real name was "Louie
DeBary." It is shown, however, that both names identify
the same person, that deceased often wrote his name "L. D.
Bary." I. J. Rhodes, cashier of the McDowell County Na-
tional Bank, at which deceased made his deposits, testifies
that the deceased wrote his name "L. D. Bary." The
name employed in the indictment being a name frequently
used by deceased and the one by which he was commonly
known and identified, there is no material variance. *State*
v. *Alie,* 82 W. Va. 601, 96 S. E. 1011.

The refusal to give defendant's instruction No. 11 is jus-
tified by the giving of his No. 10 on the same point, which
states the law more accurately.

Finding no error the judgment must be affirmed. But,
as the time fixed by it for the execution of the prisoner has
passed, the case will be remanded to the circuit court of Mc-
Dowell county for the purpose of setting another day for the
execution of the sentence, *State* v. *Haddox,* 50 W. Va. 222,
and it is so ordered.

*Affirmed and remanded*