# CHARLESTON.

MYRTLE GIBBARD v. DORSEY EVANS.

Submitted February 1, 1921.    Decided February 8, 1921.

1.  NEW TRIAL—*Characteristics of Newly Discovered Evidence Warranting New Trial Enumerated.*

     To justify granting a new trial for after discovered evidence, the party relying thereon must have been diligent before the verdict, the evidence must be material and not merely cumulative, and such as on a new trial ought to produce the opposite result, and is not proposed simply to discredit or impeach a witness on the opposite side. (p. 651).

2.  WITNESSES—*Denial of Witness That He Had Made Inconsistent Statements May Be Contradicted.*

     When a witness has testified to a material fact in issue, and on cross-examination is asked whether he had not on a former occasion and at the time of the occurrence to which his evidence relates, made a contrary statement to a particular person present, and he denies it, the evidence of such person is competent in rebuttal for the purpose of contradicting the witness and destroying the value of his testimony. (p. 652).

3.  EVIDENCE—*Evidence of Actions or Condition of a Person on Other Occasions Admissible.*

     Where the actions or condition of a person on other occasions are so recently connected in time and circumstance as to likely characterize his actions or condition on the particular occasion involved, evidence thereof may be properly admitted as tending to show what his conduct and condition then were. (p. 254).

4.  DAMAGES—*Recovery for Personal Injuries Not Limited by Death Statute; Recovery for Personal Injuries Generally for Jury.*

     In actions for damages for personal injuries sustained, the statute imposes no limitation on the amount recoverable. Generally the amount is for the jury to determine, and the only limitation which the law imposes is that such damages be fairly compensatory, and not such as to show partiality, prejudice or misconduct on the part of the jury. (p. 655).

5.  SAME—*$12,000 Held Not Excessive for Injuries to Married Woman in Automobile Accident.*

     The verdict of twelve thousand dollars in this case, in favor of plaintiff, a married woman forty years of age, who in an

automobile accident was badly cut and scarred about the face and head, her ability to masticate her food permanently impaired, and her head and neck permanently drawn over, and was otherwise permanently injured, is not so excessive as to justify the granting of a new trial. (p. 655).

Error to Circuit Court, Cabell County.

Action by Myrtle Gibbard against Dorsey Evans. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Simms & Staker* and *Holt, Duncan & Holt,* for plaintiff in error.

*Williams, Scott & Lovett* and *M. P. Wiswell,* for defendant in error.

MILLER, JUDGE:

We are called upon by defendant to reverse the judgment below in favor of plaintiff for twelve thousand dollars, damages assessed by the jury for personal injuries sustained from the collision, on March 21, 1920, in the city of Huntington, of two automobiles, one owned and being driven by defendant, the other owned by plaintiff and her husband and being driven by the latter.

The questions presented are not many, nor difficult to solve. The first is that defendant should have been granted a new trial on his motion based on newly discovered evidence. The evidence tendered was that of one William Sanson, embodied in his affidavit presented on the motion, the substance of which was that on the occasion of the wreck he was coming along the street and saw defendant Evans going east on Adams Avenue west of Johnson's Lane on the right hand side of the street; saw Gibbard, the driver of the other car, coming west on Adams Avenue just above Johnson's Lane, when he attempted to make a left hand turn going south on Johnson's Lane, and struck Evans; that from what he observed Evans was in no way to blame, and was sober and not drinking to his knowledge. It is conceded that to have warranted favorable action on said motion, such evidence must have been discovered since the trial; that defendant must have been diligent in his search for evi-

dence before verdict; that the evidence was new and material, and not merely cumulative; that it was such that a new trial ought to produce the opposite result; and that its object was not simply to discredit or impeach a witness on the opposite side. Such is the law respecting newly discovered evidence, as recently reaffirmed in *Phoenix Fire Insurance Co.* v. *Virginia-Western Power Co.,* 81 W. Va. 299.

Defendant's affidavit offered in connection with that of Sanson is that he discovered this evidence since the former trial, and that before the trial he had been diligent. But does the proposed testimony of Sanson in other respects answer the requirements of the law respecting new trials based thereon? There was no conflict in the evidence that just before the accident defendant was going east, and plaintiff and her husband were going west, the former west, and the latter east of Johnson's Lane. The rest of the proposed testimony related solely to the reaching of Johnson's Lane, and whether just before the impact Gibbard turned suddenly to the left and struck the Evans car midship as he was about to pass, or was in the act of stopping his car when Evans on the wrong side of the street drove his car into the plaintiff's car in a head-on collision doing the damage. A number of witnesses, including plaintiff and her husband, testified to the character of the collision and the place and direction in which the cars were moving and the result to each of the cars, not contradicted. On the question whether Gibbard suddenly turned to the left when near defendant's car, defendant offered his own testimony and that of his wife, and that question was before the jury on the trial. Sanson's evidence would only be cumulative of their evidence, and contradictory of the overwhelming evidence of the other witnesses, including some of those for defendant, and of the physical effects on the two cars, and would not likely have produced a different finding by the jury. So that if Sanson's evidence should be admitted, it would be simply cumulative and contradictory, not justifying a new trial based thereon.

The next question in logical order to be considered is whether the court allowed hearsay evidence to go to the jury over defendant's objections. This question involves certain testimony of Dr. C. O. Tate. When recalled by plaintiff in re-

buttal, and after answering that he knew the witness C. A. Wilson previously examined by defendant, he was asked whether at the time and place of the accident Wilson had not said to him in substance that "Dorsey was drunk and making a fool of himself; see if you can not get him away from here." He answered that he did. On his examination in chief Wilson was asked as to the condition in which he found Evans at the time of the accident. He said he found him in a nervous condition; and to the direct question whether he in his opinion was drunk, he answered that he did not think he was. This was material, because the mental and physical condition of Evans at the time was in issue as accounting for his conduct then and just before the accident; and on cross-examination Wilson was asked whether at the time and place of the accident he had not said to Dr. Tate: "Dorsey is drunk and making a fool of himself. See if you can not get him away from here." His answer was: "No, sir. I never made any such statement as that." The foundation was thus laid for impeaching his testimony by that of Dr. Tate, on the question brought out on direct examination, and as to which the jury were entitled to be enlightened. The object of this testimony was not to introduce original hearsay evidence, but was for the purpose of contradicting the witness for defendant on a fact to which defendant's witness had testified. Such testimony was competent, if not on the material fact, for the purpose of weakening or destroying the value of the witness's testimony. *Jaggie* v. *Davis Colliery Co.*, 75 W. Va. 370; *State* v. *Kock, Id.* 648.

Another point of error affects the evidence of plaintiff's witnesses Dr. D. L. Ash, C. F. Zimmerman and Fred L. Blume, which related to the condition of the defendant Evans on the same day, and within from twenty minutes to a half hour before the accident, and also bearing on the question whether he was drunk or sober when the accident occurred. Numerous other witnesses present testified to the fact of his drunkenness at the very time of the accident, and if all the testimony of these witnesses objected to had been eliminated, the jury could not have found otherwise than that Evans was then in a state of intoxication.

The evidence of Dr. Ash is that shortly before the accident he passed Evans about two blocks west of the stone bridge on Four Pole; that Evans had the front end of his car lodged up against a telephone pole; that he was sitting in his car and looking down and out sideways of the car; that coming back and just before reaching the turn in the road below the stone bridge, he met Evans there in the road, and that he seemed to be weaving back and forth, and Wiswell who was driving witness's car on the right hand side of the road had to drive clear off of the road in order to get out of the way of Evans' car. The evidence of the witness Blume corroborates that of Dr. Ash. The testimony of Zimmerman related to defendant's condition or apparent condition at the place of the accident. between 4:30 and 5 o'clock P. M., a few minutes after it occurred, when he had come back to look after his car. The time of the accident was about 4:25 P. M. This witness said: "I would say the man was drunk." The objection to this testimony is that it relates to matters not directly conneited with the accident, and not a part of the *res gestae*. In support of this proposition we are cited to *Beard* v. *The Indemnity Ins. Co.,* 65 W. Va. 283, affirming the general rule that where the issue is whether a person did a particular thing or was in a particular state, the fact that he did a similar thing or was in a particular state at some other time, is inadmissible. Like most general rules this one has its exceptions. One recognized and applied by this court is that where other actions and conduct of a person accused of wrongdoing were so recently connected in time and circumstance as to likely characterize his conduct and condition on the particular occasion involved, evidence thereof may be properly admitted for that purpose. *State* v. *Waldron,* 71 W. Va. 1; *First Nat. Bank* v. *Barker,* 75 W. Va. 244; *State* v. *Huffman,* 69 W. Va. 770. Besides, if Evans was in fact intoxicated twenty or thirty minutes before the occurrence in question, may not the court take judicial notice that he would not likely be in a sober and responsible state at the end of that time?

The next proposition urged in support of reversing the judgment is that plaintiff and her husband were guilty of contributory negligence precluding recovery. That question of

fact was fully and fairly submitted to the jury, and as they found for plaintiff on the conflicting evidence, we must conclude they found against defendant on this question, and we can not say their finding was not warranted by the evidence.

The last ground for reversal is that the verdict and judgment were excessive and not supported by the facts proven. It is also urged that the size of the verdict imputes to the jury allowance of punative damages. There is nothing in the record indicating excessiveness in the verdict or that it includes other than compensatory damages. The jury were not asked to give punative damages; they were not by interrogatories asked to say how much, if anything, they included for punative damages. In fact our decisions now make it clear that juries are not allowed to include punative damages unless they find that the compensatory damages awarded do not constitute sufficient punishment for the wrong done. Only in such cases can the jury award smart money. *Hess* v. *Marinari*, 81 W. Va. 500. Perhaps if the verdict were clearly beyond the amount shown by the evidence to be sufficient to fully compensate the injured party, we might say the jury had included something by way of punishment. But no such case is presented here. The plaintiff, a married woman of about forty years of age, with two children, described as good looking, was cut deeply from her ear across her cheek to the corner of her mouth by the glass of the wind-shield of her car, and the muscles of her jaw were so permanently injured that she has practically lost the use of them. Her head was drawn to the side permanently; and she sustained other cuts and bruises of a permanent nature, more or less disfiguring her. She was laid up in a hospital as a result of her injuries for four or five weeks, and suffered and continues to suffer pain and anguish therefrom. Who can say the damages were excessive and more than sufficient to compensate her for her injuries? It was suggested in argument that if she had been killed, her estate would have been limited to a recovery not exceeding ten thousand dollars. But in such cases the damages go to the heirs; in this case they go to the one injured, as to whch the statute imposes no limitation. In actions for personal injuries the law fixes no definite rule for measuring compensation. From the very necessity

of the case the jury are made the judges of what is proper compensation: *Kennedy* v. *Glen Alum Coal Co.*, 72 W. Va. 635. It is true that a married woman having no separate business or estate, employing herself wholly about her husband's household affairs, who sues for personal injuries, can recover damages only for physical pain, mental anguish and impairment of her capacity to enjoy life. *Warth* v. *County Court*, 71 W. Va. 184. But based on these elements who can measure the damages to plaintiff when we consider that she must go about among her family and friends all the rest of her days in a scarred and disfigured condition, her head drawn over, and her ability to masticate her food, of the first importance in maintaining good health, greatly impaired. The verdict no doubt appears large to defendant; but if the jury were right on the facts, his wrongdoing was great, and the only way he can be made to compensate the injured plaintiff is to answer to her in damages.

We are of opinion to affirm the judgment of the circuit court.

*Affirmed.*