## CHARLESTON.

SALLIE D. CAVENDER v. THE CLINE ICE CREAM COMPANY

(No. 5419)

Submitted February 2, 1926. Decided February 9, 1926.

1. EVIDENCE—*In Absence of Showing That Witness is Better Qualified Than Jurors to Form Opinion as to Facts Already Before Jury, His Opinion to be Drawn From Such Facts is Not Admissible.*

   Where it does not appear that a witness is better qualified than the jurors to form an opinion in reference to facts al-

ready before the jury, and his deductions must be drawn from the same facts, his opinion is not admissible.　(p. 8.)

(Evidence, 22 C. J. § 624.)

2.　APPEAL AND ERROR—_Discretion of Trial Court as to Propriety of Argument Before Jury Will Not be Interfered With on Appeal, Unless Rights of Complaining Party Have Been Prejudiced or Manifest Injustice Resulted Therefrom._

Counsel necessarily have great latitude in argument before the jury; and the discretion of the trial court in ruling on the propriety of such argument will not be interfered with by the appellate court unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom.　(p. 9).

(Appeal and Error, 4 C. J. § 2805.)

3.　NEW TRIAL—_Newly Discovered Evidence to Justify New Trial Must be Material and Such as on Another Trial Ought to Produce Opposite Result, and Not Intended Merely to Discredit or Impeach Witness on Opposite Side._

To justify granting a new trial on the ground of newly discovered evidence, it must appear that such evidence is material and such as on another trial ought to produce the opposite result, and that it is not proposed simply to discredit or impeach a witness on the opposite side.　(p. 10.)

LIVELY, JUDGE, absent.

(New Trial, 29 Cyc. pp. 901, 918.)

(NOTE:　Parenthetical references by Editors, C. J.—Cyc.　Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by Sallie D. Cavender against the Cline Ice Cream Company.　Judgment for the plaintiff, and defendant brings error.

_Affirmed._

_R. G. Kelly_ and _Morton, Mohler & Peters,_ for plaintiff in error.

_Lively & Stambaugh,_ for defendant in error.

MILLER, JUDGE:

In this action plaintiff recovered in the trial court a verdict and judgment for $6,500.00 damages for personal injuries alleged to have been the result of the negligence of defendant's servant, the driver of its automobile.

The declaration alleges that defendant, "through and by its servants, carelessly, negligently, unlawfully and wrongfully ran and drove its said automobile at a great rate of speed and with great force of violence against the front or side of the automobile in which plaintiff was riding and struck said automobile in which plaintiff was riding a very violent and severe blow with its said automobile and knocked the automobile in which plaintiff was riding over a steep embankment," whereby she sustained the injuries complained of.

The declaration sets out plaintiff's theory of the case; while the defendant contends that the driver of the automobile in which plaintiff was riding as a passenger, by his own carelessness and negligence, drove his automobile from the road, or so near the edge thereof that it slipped off, causing the injuries complained of.

The refusal of the trial court to instruct the jury to find for defendant, is assigned as error. This instruction was based on defendant's theory that negligence on the part of defendant's servant was not proved; and that the accident was wholly due to the negligence of the driver of the car in which plaintiff was riding.

The car in which plaintiff was a passenger was owned and driven by one Clarence Mudd. The occupants of the car were the plaintiff, Mr. Mudd, Mrs. Adams, who was plaintiff's daughter, and Mrs. Adams' little girl. Mr. Mudd, Mrs. Adams, and the plaintiff testified positively that defendant's car struck their automobile and drove or shoved it from the road. They all say that Mudd stopped his car before it was struck. The cars were moving in opposite directions. Mudd gives as his reason for stopping, that he did not think there was room for the two cars to pass at the point where it appeared they would meet; though there was evidence that the road was 150 inches wide at the point where his car left it. The evidence tends to show that the combined width of the two cars was not over 122 inches. Plaintiff testified: "When we came in sight of the car, it was coming at a really fast rate of speed, a wild rate, rather. * * * I thought he was going to stop there. Instead of doing that he came right straight on. Mr. Mudd hollered at him when he came out

there. He did not strike the front of our car; he ground in between. Really, there wasn't room to get through. I think if the jury would measure, they would see that there wasn't room. The car scraped our car and as they went on it turned us completely over. \* \* \* They came along and struck our car. \* \* \* He came along and pushed our side over. \* \* \* All I know is that some part of the car did come in contact with our car and ground and pushed and started us over the hill.'' Mudd testified that he was driving in the middle of the road when he first saw defendant's car approaching; that he turned to the right, to within about six inches of the edge of the road; that when he saw there was not room for the cars to pass, he threw his car into the road, ''about eight inches or possibly five, and stopped''; that ''as their car came facing me, and their car started to pass, I said something about, 'What are you fellows doing.' Just then my car gave a lurch just like a giant had pushed it over and turned it upside down.'' Mrs. Adams testified: ''There was not a head-on collision, but it seemed to me, thinking it over right away,—it seems to me that they seemed to strike a slight stroke. This car was going like this on the road, going very rapidly, and perhaps a light tap here. Then just a grinding and shoving in between and the dragging on the car.''

Defendant's driver and its other employee riding with him both say that Mudd's car did not stop; and that while they were forced to run into the ditch against the bank at the side of the road, their car did not touch Mudd's car, but in passing left a space of twelve to eighteen inches between the cars. Keffer, defendant's driver, testified that he was going about five miles an hour, and that Mudd's car was making between five and ten miles.

In view of the character of this evidence it was, of course, for the jury to say whether there was any contact between the cars. But defendant's counsel contend that it would be a physical impossibility for a Ford roadster to ''crowd'' a Hupmobile roadster, weighing twice as much, from the road, if the latter was standing still at the time. The testimony of plaintiff and Mrs. Adams is that defendant's car was traveling ''at a fast rate of speed'' at the time of the accident;

and although their evidence is to the effect that defendant's car struck Mudd's car on its side and in passing crowded or pushed it from the road, we cannot conceive by what line of reasoning we would have to conclude that it would be impossible for defendant's car to shove the other car far enough on the earth road to cause it to fall over the embankment, considering all the facts in evidence. Three witnesses swear positively that the accident occurred in that manner. A question of fact was raised by the evidence, one to be determined by the jury and not by the court from any known law of physics.

In 1 Moore on Facts, section 150, it is said: "So frequently do unlooked-for results attend the meeting of interlacing forces, that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact, except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other. * * * An appellate court will not set aside a verdict based on the testimony of witnesses which can reasonably be reconciled with the physical facts, notwithstanding the court may believe the weight of the physical evidence opposes that given by the witnesses." See, also, the numerous cases cited by the text writer above quoted from. But here we do not find that the physical facts oppose plaintiff's evidence, or her theory that Mudd's car was shoved from the road.

And we are asked to hold as a matter of law that the proximate cause of the accident was the alleged crowded condition of Mudd's car; that it was negligence for three adult persons to ride in a seat 38 inches wide. The jury had before them the weight of each of the passengers in the car, together with all the other circumstances attending the accident, and it was for them to say whether or not the manner in which the car was loaded contributed to the accident.

Defendant introduced with the evidence of Keffer, its driver, some Kodak pictures taken by him a week or ten days after the accident, at the place where it occurred, showing two automobiles standing side by side on the road. The court limited the use of these pictures to showing the surface appearance of the road, and the natural surroundings, but per-

mitted defendant to prove the width of the road at that point and the width of the two cars involved' in the accident. Defendant insists that the photographs should have been admitted for the purpose of showing that the cars could pass at that point. If the jury had before them the uncontradicted evidence of the comparative width of the two cars with the road, they were bound to know that it was possible for cars to pass. Besides, the pictures were admitted, and the jury were bound to see the position of the cars.

Error is assigned to the refusal of the trial court to allow the witness Keffer to testify as to what would have been the effect upon the Ford roadster if it had come in contact with Mudd's car with sufficient force to knock his car out of the road. It was shown that Keffer completed his trip and returned to Charleston, a distance of several miles, with defendant's car immediately following the accident. But it is not shown that Keffer was any better qualified than the jury to give an opinion on this question. There is no evidence that he had ever had experience with automobile collisions, or had ever seen one, and his opinion must necessarily have been as speculative as the deductions to be drawn by the jury, with the same facts before them. In *Overby* v. *C. & O. Ry. Co.*, 37 W. Va. 524, it was held: "The opinion of a witness, who neither knows nor can know more about the subject matter than the jury, and who must draw his deductions from the facts already in the possession of the jury, is not admissible." On the same question, see *McKelvy* v. *Railway Co.*, 35 W. Va. 500; *Welch* v. *Ins. Co.*, 23 W. Va. 306; *Delmar Oil Co.* v. *Bartlett*, 62 W. Va. 700; *Cummins* v. *Railway Co.*, 99 W. Va. 511.

Two photographs of the Ford roadster, made some two weeks after the accident, were introduced in evidence, for the purpose of showing that it could not have come in contact with the car in which plaintiff was riding at the time she sustained her injuries. Counsel for plaintiff, in argument to the jury, in commenting on the introduction of these photographs, said: "Why didn't this defendant take these pictures immediately after the accident? I tell you, gentlemen of the jury, when this defendant comes into court with these pictures

taken two weeks after the accident there is something rotten in Denmark.'' Counsel for defendant asked the court to reprove plaintiff's counsel, and to direct the jury to disregard his remarks, because they were not based on any evidence in the case. His motion was overruled. Defendant's counsel argue that the remarks objected to reflected on the officers of the defendant corporation, and accused them of procuring false or perjured testimony to be introduced before the jury. The witness Keffer testified that he was present when the photographs were made, and that they represented the appearance of the car immediately after the accident. No other evidence was introduced to prove that the pictures showed the true condition of the automobile at that time. Regardless of the remarks of counsel, if the jury believe the testimony of any of the occupants of Mudd's car, they must naturally infer that the photographs could not represent the true condition of the Ford car immediately after the accident; and counsel, though he was not very diplomatic or polite in bringing out the point in mind, had a right to call to the attention of the jury the impossibility of all the evidence in the case being true, and to express to them his deductions therefrom. They were at liberty to make their own, and to arrive at the conclusion that something was wrong,—whether ''rotten in Denmark'' or not. The conflict in the evidence had to be explained in some way. Counsel suggested one explanation, but did not implicate anyone in particular as misrepresenting a fact. There is no suggestion in the record that any of the officers of the company ever saw the Ford roadster, either before or after the accident. Counsel necessarily have great latitude in argument before the jury; and the discretion of the trial court in ruling on the propriety of such argument will not be interfered with by the appellate court unless it appears that the rights of the complaining party were prejudiced thereby, or that manifest injustice resulted from the remarks of counsel. *State* v. *Clifford,* 58 W. Va. 681; *State* v. *Shawn,* 40 W. Va. 1; *State* v. *Allen,* 45 W. Va. 65; *Page* v. *Kincaid,* 129 S. E. 752.

On motion for a new trial defendant presented the affidavit of John W. Sparkes, to the effect that he and his wife visited

plaintiff in the hospital a few hours after the accident which resulted in her injuries; that plaintiff stated to him and his wife on that occasion that the Ford car did not come in contact with Mudd's car, but that Mudd drove his car so near the edge of the road that it rolled or slipped over; and that he did not make this conversation known to any person until after he learned that the case had been tried and a verdict rendered for plaintiff.

To justify granting a new trial on the ground of after discovered evidence it must appear that such evidence is material and not merely cumulative, such as on a new trial ought to produce the opposite result, and is not proposed simply to discredit or impeach a witness on the opposite side. *Gibbard* v. *Evans,* 87 W. Va. 650; *State* v. *Lemon,* 84 W. Va. 298; *Frymier* v. *Lorama Railroad Co.,* 76 W. Va. 96; *Burr* v. *Telephone Co.,* 97 W. Va. 508, 513. The apparent purpose of the proposed evidence on a new trial was to impeach plaintiff's testimony on this trial, when introduced on another trial. If plaintiff had been the only witness to testify to the facts detailed by her, the testimony of Sparkes might satisfy the rule, that the newly discovered evidence must be such as ought to produce an opposite result on another trial; but here the testimony of Mrs. Adams and Mr. Mudd fully corroborates plaintiff, and is sufficient to support a verdict for her. Even if Sparkes' testimony on another trial was sufficient to destroy the weight of plaintiff's testimony, other evidence to support her case remains. Sparkes' testimony would not introduce any new facts, and could only go to the weight of plaintiff's own testimony. In view of all the evidence introduced on the trial, we cannot say that the newly discovered evidence proposed to be used on another trial ought to produce an opposite result.

It was said in oral argument that plaintiff presented to the court counter affidavits on the motion for a new trial. We find none in the record. It is true that in the cases of Clarence Mudd and of Mary C. Adams against the Cline Ice Cream Company, arising out of the same accident, and tried subsequent to the time of the trial of this case, and which are now before us for decision, we find the affidavits of three persons,

who say that they were present in Mrs. Cavender's room at the hospital all the time Sparkes was there and could have heard all that was said by plaintiff, and that she did not make such statements as are contained in Sparkes' affidavit; and there is also in the records of the cases referred to the affidavit of Mrs. Cavender, that she did not make the statement that Mudd became excited and ran his car over the bank, or that his car was not struck by defendant's car. Counsel evidently was mistaken in thinking that these affidavits were filed in this case also.

Finding no reversible error in the judgment, it will be affirmed.

*Affirmed.*