# CHARLESTON.

ALEX GRAY AND R. M. WAYMAN *v.* R. H. POWELL AND E. O'TOOLE, JR.

(No. 5636)

Submitted October 19, 1926.   Decided October 26, 1926.

NEW TRIAL—*To Justify Granting New Trial on Ground of Newly Discovered Evidence, It Must Appear Such Evidence is Material and Such as on Another Trial Ought to Produce Opposite Result, and it is Not Merely Cumulative, Corroborative, or Collateral to Evidence of Party Seeking New Trial, and Not Proposed Simply to Discredit or Impeach Witness on Opposite Side.*

To justify granting a new trial on the ground of newly discovered evidence, it must appear that such evidence is material and such as on another trial ought to produce the opposite result, and that it is not merely cumulative, corroborative, or collateral to the evidence of the party seeking the new trial, and is not proposed simply to discredit or impeach a witness on the opposite side.

Error to Circuit Court, McDowell County.

Action by Alex Gray and R. M. Wayman against R. H. Powell and E. O'Toole, Jr., for cost of erection of building on defendant's lot.   Judgment for plaintiffs, defendants bring error.

*Affirmed.*

*Joseph M. Crockett* and *Chas. A. Tutwiler* for defendants in error.

*Strother, Sale, Curd & Tucker,* for plaintiffs in error.

MILLER, JUDGE:

The plaintiffs instituted this action for the cost of erecting an addition to a building on defendants' lot. The trial of the case resulted in a verdict and judgment for the amount of plaintiffs' claim.

At the time defendants purchased the property, the plaintiffs held a lease thereon, covering a term of one year from June 15, 1924, at a monthly rental of $75.00, the written contract of lease providing that the lessees were ''to have the refusal of a new lease on the said above described premises, at whatever price is offered to the said party of the second part by them or any other parties at the time, at the expiration of the original lease.'' Plaintiffs were assignees of this lease.

The plaintiff Gray testified that shortly after they acquired the lease, he and his partner Wayman found that they would not have enough room for their business of running a gasoline filling station and battery service, which they communicated to the defendant Powell, and that he said: ''I can build you one, and I will put up a building for approximately five or six hundred dollars, but I will have to raise the rent;'' that he told Powell it would not cost that much, and Powell said: ''If you can build it cheaper than that, go ahead and put the building up;'' that Wayman said: ''If we put the building up will we get enough out of it? We don't want to lose anything on the building;'' to which Powell answered: ''Go ahead and put the building up, and I will pay you back for the building, less the depreciation, and so that was agreeable to us, and we had Mr. Smithey to put the building up.''

Wayman testified: ''Well, we went to him and asked him about the building, and he told us he would build it for us, and it would cost $500.00, or something like that, and we decided that we would build it cheaper than that, or have it done cheaper than that, and so then he told us to go ahead and build it, and I asked him about getting my money back. We wanted to get our money back for the building, and he said he would pay us back whatever the building cost, less

the depreciation and the insurance, at the end of the first year's lease. Q. Did he say anything about the fact that he would then have to increase the rent? A. Yes, he said he would have to increase the rent. Q. Did he increase the rent at the end of the year? A. Yes, sir. Q. How much? A. Fifty dollars per month. Q. And he was to either pay you back at the end of the year or increase your rent. A. Yes, sir."

The defendant Powell testified that plaintiffs came to him, "and said they wanted another building in which to do battery work, and also a little repair work, and wanted to know if I would build it for them, and I told them I would not let them have the same lease next year unless they could raise what I asked for it, and I finally told them I would build the additional building, and it would cost approximately around five hundred dollars, and they would pay fifty dollars additional rent for it. They seemed to think that they could build it a good deal cheaper than that, and then asked me if I would let them build the building, and I did, with the understanding that if they could erect this building and use it for the first year without any rent, that would pay them for the building, and they were to be charged fifty dollars a month after that."

On December 17, 1924, defendant Powell wrote plaintiffs: "This is to inform you that beginning Jan. 1st, 1925, the rent on the East End Filling Station leased by you from us will be $125.00 per month. This raise in rent is caused on account of the additional building being built on this property. If we understand it correctly this building cost you $400.00. We will pay you this $400.00 for the building after deducting $50.00 per month from said price from the time you have been using the building, which is six months counting December. This would make $300.00. You may deduct $100.00 from your check when you pay your December rent, sending us check for $25.00. This will pay for the building and pay your rent up for the month of December."

However, plaintiffs paid $75.00 rent for the month of December, and the same amount thereafter each month until

June 15, 1925, at which time a new lease was executed, at a monthly rental of $125.00. The defendant Powell testifies that at the expiration of the original lease, "Mr. Gray came to our place and the contract (the new lease) was written up and nothing was ever mentioned about the building, for they had used it for ten months, and they had gotten their money out of it for rent, and under this new contract the rent was raised only to $125.00, and they signed it shortly afterwards and sent me a bill for $408.00 for erecting that building. I went to see them and told them if I owed them for the building, which I would be glad to pay, they owed me fifty dollars a month for the use of it, which would only be fair. * * * I intended to increase it anyway, whether we put the building up or not. I figured they would get the use of it for ten months for what it cost them."

To the declaration defendants pleaded non assumpsit, and filed their special plea of set-off, claiming additional rent for ten months, at $50.00 per month.

The only ground assigned by defendants' motion for a new trial in the court below was alleged after discovered evidence. With their own affidavit in support of their motion, defendants filed the affidavit of one J. T. Eddins, who said that he had gone to plaintiffs some time in May, 1925, with a view of buying their lease, and that Gray told him "that he was paying $75.00 per month rent, but had been notified that he would have to pay $125.00 next year, at the expiration of his lease, and that he had put up all of this building where his storage battery was in the shed to the building, up at his own expense, that he had asked the owners, had asked Bob Powell, he said to add on to it for him, and Bob told him that if he wanted anything built there, he would have to build it himself at his own expense, and now he had put this up at his own expense and they had raised the rent to $125.00 at the expiration of the lease, and if he wanted it next year he would have to pay $125.00, and in order to get any use of it an additional year, that is in addition to the use that he had already had of it, he would have to pay $125.00."

The only question before us for consideration is whether this affidavit states facts sufficient to justify setting aside the verdict of the jury and granting defendants a new trial. "To justify granting a new trial on the ground of newly discovered evidence, it must appear that such evidence is material and such as on another trial ought to produce the opposite result, and that it is not proposed simply to discredit or impeach a witness on the opposite side." *Cavender* v. *Cline Ice Cream Company,* 101 W. Va. 3; *State* v. *Lemon,* 84 W. Va. 25; *Gibbard* v. *Evans,* 87 W. Va. 650; *Burr* v. *Limestone Telephone Company,* 97 W. Va. 508. And it must appear that such evidence is not merely cumulative, corroborative, or collateral. *State* v. *Stowers,* 66 W. Va. 198; *Flat Top National Bank* v. *Parsons,* 90 W. Va. 51; *Gibbard* v. *Evans, supra.*

Evidently it was proposed by the facts stated in Eddins' affidavit to corroborate the defendant Powell and to discredit the defendants' testimony. But if not cumulative, would this evidence have added weight to defendants' case? While the defendant Powell testified that he agreed to let plaintiffs erect the additional building with the understanding that they might use it for the first year without paying rent, after which they were to be charged fifty dollars per month, on December 17, 1924, about the middle of the term of the original lease, and before the bill for the cost of erection had been presented to him, he wrote them that the rent would be increased to $125.00 after the first of the year, and in addition asked for an increase of fifty dollars per month from July 1, 1924, from which he offered to permit plaintiffs to deduct the amount expended by them on the building. And defendants' plea of set-off claims the increase of $50.00 per month for ten months. Plaintiffs on the trial only claimed $384.63, the amount expended by them less depreciation in the building during the term of the original lease.

Whatever materiality Eddins' proposed testimony might have in respect to the issues of fact in controversy, it must either discredit plaintiffs' testimony that they were to be reimbursed for the money expended in erecting the building

and that the rent was not to be increased until the end of the term of the original lease whether they or defendants paid for the building, or to corroborate Powell's testimony that defendants were to put up the building at their own expense; but it does not support defendants' claim that they were to have fifty dollars additional rent from the time the building was completed and occupied by plaintiffs, if the defendants paid for the building, as expressed in Powell's letter of December 17, 1924. In view of the evidence introduced on the trial, we do not think that Eddins' testimony is such as ought to produce a different result on another trial.

The judgment will be affirmed.

*On petition for rehearing:*

Counsel for defendants contend that the proposed testimony of Eddins is not cumulative, but is new evidence setting up new facts; and that it does not tend to impeach *a witness* in the case, but contradicts the testimony of *one of the parties* to the action, and is an admission of that party against his interest. By reference to the opinion it will be noted that the decision was not confined to the cumulative or impeaching character of the evidence proposed. The principal question discussed was whether the newly discovered evidence ought on another trial result in a verdict for the defendants. Eddins' affidavit may tend to support Powell's testimony that plaintiffs were to erect the addition to the building at their own cost; but it does not support his theory that he was to pay for the building and collect additional rent from July, 1924, evidenced by his letter of December 17th, and defendants' claim of set-off. Powell does not explain why he wrote this letter, nor why defendants accepted $75.00 per month rent for the full term of the original lease. These acts were certainly not in accord with his version of the contract as testified to by him on the trial. In concluding the original opinion we said, "we do not think that Eddins' testimony is such as ought to produce a different result on another trial."

Counsel argue that the holding here is not in accord with the opinion in the case of *Cavender* v. *Cline Ice Cream Com-*

*pany,* 101 W. Va. 3, where we said: "If plaintiff had been the only witness to testify to the facts detailed by her, the testimony of Sparks might satisfy the rule, that the newly discovered evidence must be such as ought to produce an opposite result on another trial; but here the testimony of Mrs. Adams and Mr. Mudd fully corroborates plaintiff. and is sufficient to support a verdict for her." In the present case Wayman testified to substantially the same facts as Gray. It is true he was also a party to the action; but Gray's admission, if true, would not bind him, and the jury must necessarily disbelieve his testimony to find for the defendants.

The petition for rehearing will be denied.

*Affirmed.*