# Wheeling.

## J. Q. A. NADENBOUSCH *vs.* JOHN SHARER.

### January Term, 1870.

1. The pleas usually termed belligerent rights pleas, overruled on demurrer.

2. A case in which a verdict is sustained by the evidence, and in which it was proper to refuse an application for a new trial, asked for by defendant, because the damages were excessive.

3. Notwithstanding the improper conduct of a juror, in another case tried at the same term of the court, who is empaneled in this case, and where it is not shown that he had made up or expressed any opinion in respect to this case, or that he was in any manner so connected with any of the parties as to render it improper for him to sit, it is not grounds for granting a new trial.

4. In an action of trespass on the case for false arrest and imprisonment, after the jury had found a verdict for the plaintiff, the defendant showed by the affidavit of a witness, that plaintiff told the witness that while plaintiff was confined in the jail at Winchester, that he was not confined with the other prisoners, but had the key and took charge of them at times when the jailor was away, and took his meals at the table with the jailor's family; and it is not shown that this evidence could not have been produced on the trial, by the use of due diligence on the part of the defendant, and if it had been produced, it does not appear that it would have gone to the merits of the controversy, but only in mitigation of damages.   HELD :

It is not sufficient cause to set aside the verdict and grant a new trial.

This was an action of trespass on the case brought in the circuit court of Berkeley county, in August, 1865, by George Sharer against John Q. A. Nadenbousch, for the unlawful arrest and imprisonment of the plaintiff, by the defendant.   At the March term, 1867, the defendant obtained leave to file, and did file, three special pleas, in which pleas belligerent rights are set up as a defense to the

plaintiff's action.  The plaintiff filed general demurrers to said pleas, and the court sustained the demurrers.  The defendant also pleaded not guilty, and issue was thereon joined.  The jury empaneled in the case found the defendant guilty, and assessed the plaintiff's damages at 2,000 dollars, and judgment was rendered on the verdict.  The evidence in the case was as follows:  About the 16th or 17th of April, 1861, the defendant, who was a captain of a volunteer militia company which was organized in 1859, about the time of the John Brown raid, called the company together at their armory in Martinsburg, and reported to them that he had received an order from Governor Letcher to march his company to Harper's Ferry forthwith.  The plaintiff had joined said company, which was called the Berkeley Border Guards, at the time of its organization, and was a member of it at the time of said call.  That plaintiff attended the meeting held in pursuance of said call, which was largely attended by the members of said company, at which there was considerable discussion as to the object of the order, and as to the propriety of obeying it.  That a large majority of said company were Union men, and that it was finally decided by a large majority to obey the call of the Governor, and march to Harper's Ferry, under the national flag.  And defendant told the members of the company that if they were not satisfied after they got there they might return.  That the plaintiff was in favor of obeying the order of the Governor, and used his influence to induce others to go to Harper's Ferry.  That on the next day the company went to Harper's Ferry under the command of the defendant, and carrying the national flag.  That plaintiff went with the company to Harper's Ferry, or joined it there a day or two afterwards.  That after the company had been at Harper's Ferry a few days, the national flag was taken down, and another, probably the Virginia State flag, substituted for it.  That some time after the company went to Harper's Ferry, the plaintiff was ordered across the Potomac into the State of Maryland, to do duty there, which

he refused to do, and was arrested and placed in the regimental guard house for disobedience of orders. That when the troops commenced the removal of government property from Harper's Ferry, the plaintiff said he was a secessionist, but if that was secession he would have nothing to do with it. That afterwards the plaintiff left the company, without leave, and went home and declared he would not return. A detachment was sent out from the regiment to which defendant's company belonged, to arrest deserters. That plaintiff left his home and went into Maryland to avoid arrest, and after some weeks he crossed the Potomac into Virginia and was arrested by the cavalry pickets of General Jackson's army, and was taken to the guard house of Col. Allen's regiment, to which defendant's company belonged. That plaintiff's name had never been put on the roll of deserters, and no order had ever been issued for his arrest. The plaintiff was taken to Winchester and put in jail in a room about fifteen feet square, in which about twenty-five persons were confined, and that they had no beds, blankets, or other covering; that their fare was scanty, the prisoners filthy and lousy, the jailor profane and brutal, almost daily assuring the prisoner that he would be shot or hung. That plaintiff was in the Winchester jail about six weeks, and was absent from home as a refugee or prisoner about three months, and was finally released upon condition that a responsible person would make affidavit that he was not a spy.

Exceptions were taken by the defendant to the ruling of the court refusing to grant a new trial, which was asked for by the defendant, because the verdict of the jury was not sustained by the evidence, and because the damages found by the jury were excessive, and because of newly discovered evidence, and an improper and incompetent juror was allowed to be empaneled in the cause.

Hon. E. B. Hall, judge of the circuit court of Berkeley county, presided on the trial of the cause.

*Faulkner* for plaintiff in error.

*Stanton & Allison* for defendant in error.

MAXWELL, J. We are advised that the matters in dispute in this case have been settled between the parties since the supersedeas was allowed, but the parties being unable to agree in respect to the costs of the proceedings in this court, they have imposed on us the trouble of looking into the whole case, and of determining all the questions in it, merely to get at the question of costs.

The first ground of error assigned is, that the court erred in its judgment in sustaining the demurrers to the pleas filed.

These pleas did not aver sufficient grounds of defence, as has been repeatedly decided by this court, so that the demurrers to them were properly sustained.

The second ground of error assigned is, that the court erred in refusing to grant a new trial, because the verdict of the jury was not sustained by the evidence.

This objection is not well taken, because the evidence was sufficient to warrant the verdict.

The third ground assigned as error is, that the verdict is excessive. The damages found by the verdict seem high, but as the circuit court, with all the evidence fresh before it, refused to set the verdict aside, it does not seem to be a case in which this court should interfere.

Another ground of error assigned is, that an incompetent and improper juror was allowed to be empaneled in the case. There is some evidence in the record going to show that the juror objected to behaved badly in another case tried at the same term of the court, but there is nothing in the record tending to show that he had made up or expressed any opinion in respect to this case, or that he was in any manner so connected with any of the parties as to render it improper for him to sit in the trial of it.

Still another ground of error assigned, is the refusal of the court to grant a new trial on account of the discovery of important evidence after the trial.

There is nothing in the record which shows that the newly discovered evidence might not have been discovered before the trial by the use of diligence, nor does it appear that the evidence, if produced on the trial, would have gone to the merits of the controversy, but only to mitigate the damages.

There does not seem to be any error for which the judgment complained of ought to be reversed, and the same must be affirmed, with costs to the defendant in error.

BROWN, *President.*

This case presents a question which heretofore has not been, so far as I am aware, presented in any other case before this court. It is, that the plaintiff, a rebel soldier, in the rebel service, and under the command of the defendant as his superior officer, in the late rebellion, afterwards deserted, and was subsequently, during the war, arrested by the defendant, under the orders of the confederate government, as such deserter, which was the trespass complained of. The cases heretofore before this court have been actions by loyal and peaceful citizens against parties who were rebels, and who sought to justify the trespass, whether to person or property, under the defence of belligerent rights, as it is commonly called.

Nor has any case yet occurred before this court where the trespass complained of was committed on a Union soldier in the service, by a rebel soldier as an act of war. The question, therefore, comes squarely up for determination in this case, whether the principles settled in the preceding cases alike determine this; in other words, whether a rebel in arms may sue and recover against his fellow rebel in arms, in the courts of the government sought to be overthrown, for an arrest and restraint for desertion, and which arrest and restraint were by the rebel military authority, and in aid of the rebellion.

The act of desertion was a *prima facie* withdrawal from the unlawful combination, and the arrest and restraint, for

it cannot be said to implicate him in the illegal aiding the rebel cause, in so far as it, the arrest, tended to that end.

The injury the plaintiff sustained was inflicted without lawful authority, and since he was free from implication in the illegal act, no good reason is perceived why he shall not recover for it, after his relation to the courts and the country rebelled against has been so far restored as to enable him to enter them and be there entertained as a suitor.

This case differs from any heretofore decided by this court in another particular. In the case of *Hood* vs. *Maxwell*, 1 W. Va. Rep., 219, the trespass was in the taking the goods of a private citizen by the defendant, as military quarter-master, under the orders of a military officer acting in hostility to the United States. In this case the trespass was in the arresting and imprisonment of the plaintiff for leaving his military company, which company was lawful in its organization, but had, at the time of his leaving it, become incorporated into the hostile military force, assembled, as alleged, by the order of Governor Letcher, at Harper's Ferry, on the 17th of April, 1861, to resist the authority of the United States, within the State of Virginia. The same effort at justification is made, and under the same unlawful authority, and, I think, the same principles must determine this case that determined that, and in the same way, and are as applicable to injuries to the person as to property.

Upon the question of excessive damages, it may be remarked that, it must be a strong case to set aside a verdict for that cause, because it is the peculiar province of the jury to ascertain the amount of damages, and they are better able to judge of the circumstances of the case and the weight of testimony, and the credibility of witnesses, and the peculiar hardships and aggravations attendant upon the injury no less to the person than to the feelings, and the reproach, humiliation, and disgrace, into which the injured party may be brought by the imprisonment as a felon and traitor, though to the cause of rebellion.

Surely that cause, which was upheld, in part, by resort to

to such means, cannot commit itself to the courts of the State sought to be subjugated, as a mitigating cause in a case like this. If it were a simple question of imprisonment for six months, the verdict of 2,000 dollars might be high, perhaps excessive. But when that imprisonment is accompanied with the odium and indignities, the hardships and ill-treatment, apparent from the evidence, it seems to me, there are but few persons who could voluntarily undergo it for that amount. I am unable, therefore, to perceive any ground for disturbing the verdict for that cause.

With these views, I concur in the opinion just delivered in the cause.

JUDGMENT AFFIRMED.