# CHARLESTON.

## STATE v. GLENN McLAUGHLIN.

Submitted October 3, 1922.    Decided October 10, 1922.

1.  CRIMINAL LAW—*Verdict on Conflicting Evidence Not Disturbed on Appeal Unless Plainly Wrong.*

    The jury is the sole judge of the weight of the evidence, and where the evidence in a criminal case is conflicting, this court will not disturb the verdict of the jury as being contrary to the evidence, unless it can see that the verdict is plainly wrong.   (p. 657).

2.  PARDON—*Former Parole of Accused in Different Case Cannot be Revoked in Imposing Sentence.*

    Where, upon a conviction for a misdemeanor, the trial court enters a valid judgment of fine and imprisonment, and in the same case undertakes to revoke a parole theretofore granted the defendant in another and different case and to direct that the defendant serve out the remainder of his former sentence in such other case, that part of the order revoking the parole and directing that the defendant serve out the remainder of such former sentence will be set aside, and the order as modified will be affirmed.   (p. 658).

Error to Circuit Court, Pocahontas county.

Glenn McLaughlin was convicted of unlawfully selling, offering, keeping, storing, exposing for sale, and soliciting and receiving orders for liquor, and he brings error.

*Modified and affirmed.*

*N. C. McNeil,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

MEREDITH, JUDGE:

Defendant, a youth aged 20, was convicted under an indictment charging him with unlawfully selling, offering, keeping, storing and exposing for sale and soliciting and receiving orders for liquor. He assigns as error the refusal of the trial court to sustain his motion to set aside the verdict as contrary to the law and the evidence.

It appears that about 6:00 p. m. on the evening of July 4, 1921, defendant, in company with Charlie McQueen and wife, drove in the McQueen automobile from near Marlinton to the Alleghany Club House at Minnehaha Springs, for the purpose, as defendant claims, of attending a dance to be held there. It turned out that the evening's entertainment was for invited guests only, and that his presence was neither expected nor desired.

The evidence for conviction consists of the testimony of H. M. Lockridge, manager of the Club, and Glenn Harold, Dr. Salter, and Dr. E. G. Harold, guests at the dance. The case, as made out, is that McLaughlin proposed to sell liquor to Lockridge or his guests, which liquor having been hid by defendant under the porch of the club house was later found by Dr. Salter and Dr. Harold and removed. None of these witnesses actually saw any liquor in the possession of defendant, and defendant denies any knowledge of its existence. While admitting offering whiskey to Lockridge "in one way," he claims that the proposal was made merely in jest, that he had no liquor wherewith to make good such an offer, and that in fact he felt the need of intoxicants for his own refreshment.

As the disposition of this case turns entirely upon the evidence, it is necessary to review it briefly.

As just related, the State introduced four witnesses, Lockridge, Glenn Harold, Dr. Salter and Dr. Harold; Lockridge was the first called. He claims that just about dusk he

walked out of the club house for the purpose of speaking to certain acquaintances, when he noticed defendant and another young man in a Mr. Greer's automobile; that defendant called him to the machine and inquired whether he, Lockridge, or any of his guests wanted anything to drink; concluding with this expression: "If you find out any person that wants anything to drink, I am going out in the car after while, and I will be back soon, and I will furnish them what they want." Lockridge states he made negative replies to these proposals and walked on, but a short time later was informed that liquor had been taken from the automobile and hid under the porch of the club house. Upon search therefor, however, he found none. A short time later defendant called Lockridge out, and with abusive language demanded to know whether he had removed his liquor from under the porch, to which Lockridge answered that he did not find it, but understood that other parties did, whereupon McLaughlin vowed vengeance in case he found later that his liquor had been taken. Observing that defendant was intoxicated, Lockridge ordered him from the premises, and called for the sheriff. Thereupon defendant departed and presumably returned to his home with the McQueens, who took him in their car a short distance from the club. Lockridge saw no whiskey in defendant's possession.

Glenn Harold stated that a little before dusk the defendant approached him while he was standing at the counter and proposed that they go after some whiskey. This Harold refused to do. He observed that defendant was intoxicated but saw no liquor.

At about the same time, Dr. Salter and Dr. Harold were also informed of the hiding of the liquor under the porch. They immediately went in search of it and found there a half gallon jar of clear fluid, which they judged, and no doubt correctly, to be liquor, though they did not smell or taste it. They removed the jar to some weeds near the back porch, but when the officers came to get it later, it had disappeared, no witness knows where.

The defendant admitted taking a few drinks before leav-

ing Marlinton, but denied having any liquor in his possession at the Club, or offering to supply the same to Lockridge or his guests. He claims that Lockridge came up to him and said something about it being a private dance, whereupon defendant stated that he would go away in a few minutes. Before doing so, however, he states he went inside to see Glenn Harold as he wanted some liquor for himself, but that Harold refused to go for any and that Greer refused the use of his car for such a purpose. About this time he claims Lockridge came running out with his coat off, and the defendant, in a spirit of jest, and with no thought of arousing Lockridge, said: "Mr. Lockridge, do you want a little whiskey"? This, according to defendant, caused Lockridge to get "up in the wind," and after some words had passed, defendant departed in the McQueen automobile.

The testimony of the McQueens is corroborative of the defendant's in that they disclaim any knowledge of the possession of liquor by the defendant though they were near him most of the evening. Though they witnessed the conversation between him and Lockridge, they did not hear the words spoken.

The State called Lockridge in rebuttal. He supplemented his former testimony by adding that shortly after his first conversation with defendant, but before the latter demanded the return of his liquor, he noticed defendant, McQueen and other men acting suspiciously, dodging around the corner of the club house, and that for this reason he watched them closely, and finally, by calling for the sheriff, succeded in getting them off the premises.

Upon this evidence, the jury returned a verdict of guilty. Defendant urges that it be set aside as contrary to the law and the evidence. No liquor was ever seen in his possession, and the jar of "clear fluid" under the porch was not proved by any witness to contain the ingredients named in the indictment. On the other hand, defendant confessed to what he characterized as a joking offer of liquor to Lockridge and, if the latter is to be credited, admitted his ownership of liquor hid under the porch. It is perfectly possible of course that

he had reference to liquor other than that found by Dr. Salter and Dr. Harold. In view of these conflicting elements in the evidence it is not our province, but rather it was the province of the jury, to weigh the various circumstances and determine the innocence or guilt of the accused. "The verdict of a jury in a criminal case based upon conflicting oral evidence will not be reversed upon writ of error to this court, unless the evidence so clearly preponderates in favor of the defendant as to clearly indicate that the jury was influenced by passion, prejudice or other improper motive in arriving at such verdict." *State* v. *Cook,* 81 W. Va. 686; 95 S E. 792. We find no such preponderance and the verdict will not be disturbed on this appeal.

The court sentenced defendant to jail for sixty days and fixed his fine at $100. This will not be disturbed. But the court entered this further order:

> "And it appearing to the court that on the ...... day of .... 1921, the said defendant was sentenced by A. E. Smith, one of the Justices of this county, to serve a sentence of sixty days in the jail of this county for violation of the prohibition laws of this state; it further appearing to the court that before the expiration of said sentence, to-wit: at the June term, 1921, of this court the said defendant was paroled under the provisions of section 29 of chapter 152 of the Code and that said parole was violated by said defendant, it is therefore further ordered that the said defendant, Glenn McLaughlin be and is hereby required to serve out the remainder of the sentence imposed by said Justice and the sentence herein imposed shall not run concurrently with the sentence imposed by said Justice and the prisoner is remanded to jail."

There is nothing in the record justifying this further order in this case. Whatever order might be entered in relation to the sentence before the justice it ought to be entered in that case not in the case at bar. The judgment

will be modified and vacated insofar as it shows defendant violated his parole and requires him to serve out the remainder of the sentence imposed by the justice and as modified, will be affirmed.

*Modified and affirmed.*