# CHARLESTON.

J. CARL BURR *v.* THE LIMESTONE TELEPHONE COMPANY.

Submitted October 28, 1924.   Decided November 11, 1924.

1. TELEGRAPHS AND TELEPHONES—*Declaration for Injuries From Low Wire Need Not Allege Telephone Company's Knowledge of Condition.*

   A declaration which charges that it was the duty of a telephone company to construct and maintain its wires above a public street high enough to permit plaintiff to pass thereunder without being caught by said wires and injured, but that defendant carelessly and negligently constructed and maintained one of its wires so low and near the street that plaintiff was caught thereby and thrown from a moving motor truck and injured while lawfully traveling along the street, need not allege that the defendant or its officers or agents had knowledge of the low condition of the wire at the time of the plaintiff's injury. (p. 509).

2. SAME—*Negligence of Telephone Company in Maintenance of Low Wire Held for Jury.*

   The question of negligence is for the jury when there is a substantial doubt as to the facts or as to the inferences to be drawn from them. (p. 511).

3. SAME—*Contributary Negligence of One Thrown from Truck Because of Low Wire Held for Jury.*

   Contributory negligence when it depends on questions of fact and testimony, is for the jury. (p. 511).

4. NEW TRIAL—*Defendant Surprised by Evidence Should Move for Continuance Before Verdict.*

   When a party defendant to an action is surprised by the introduction of evidence on the trial, he should move for a continuance before verdict. (p. 513).

Error to Circuit Court, Greenbrier County.

Action by J. Carl Burr against the Limestone Telephone Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

97 W. Va.

*Charles S. Dice, G. Gilmer Easley* and *Price & McWhorter,* for plaintiff in error.

*J. S. McWhorter, Revercomb & Revercomb* and *Koontz, Hurlbutt & Revercomb,* for defendant in error.

MILLER, JUDGE:

Plaintiff was thrown from his motor truck and severely injured when his head or neck came in contact with a telephone wire erected and maintained by the defendant company across one of the streets in the town of White Sulphur Springs. From a judgment in favor of plaintiff for the sum of $1,625.00, defendant has prosecuted the present writ of error.

The first error assigned is that the declaration does not allege that the defendant or its agents had knowledge of the low condition of the wire at the time of the accident, or by the exercise of due diligence could have had such knowledge. The declaration sufficiently alleges the duty of defendant to use due and proper care so to construct and maintain the wire at a sufficient height above the surface of the street to allow plaintiff to travel thereon, as he had a right to do, without being caught by said wire and injured in the manner in the declaration set out; and the neglect of that duty. And it is further alleged that defendant negligently and carelessly constructed and maintained the wire, so low that plaintiff was injured thereby. The defendant must be charged with knowledge of where it erected and maintained the wire. How could it erect and maintain a wire without knowing where the wire was located, through its officers or agents? The act of negligence is clearly stated. *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661; Hogg's Plead. & Forms, sec. 140.

From the evidence adduced on the trial it appears that the wire causing plaintiff's injury was erected by the defendant about three months before the accident complained of. It was strung across the street from a point on a pole about fifteen feet above the pavement to a dwelling house on the opposite side, where it was fastened to the top of a window frame nine feet and seven inches from the ground. Two witnesses, the defendant's linemen who erected the wire, tes-

tified that they also secured the wire to an insulator on the limb of a tree standing in the yard between the street and the dwelling house, which elevated it some distance above a straight line from the pole to the window frame; and that it was properly strung and fastened at all three points. Just after the accident it does not appear from the evidence that the wire was fastened to the tree; but if not, there is nothing in the record to show when it became detached. The evidence as to the height of the wire before the accident is very conflicting and confusing. One witness testified that on the day of the accident he had driven a wagon load of hay along the street, the top of which was twelve or thirteen feet from the surface of the street, and that he was standing on the load of hay, but the wire did not interfere with him as he passed. Other witnesses say that some time previous to the accident, the wire was so low that it had to be lifted with a stick to permit wagons loaded with hay, fodder, and in one case large trunks, to pass along the street. The measurements made shortly after the accident show that the wire was nine feet ten inches above the pavement at the center of the street and eight feet six inches high at the side of the street next to the dwelling house. The floor of the motor truck in which plaintiff was riding was three feet and two inches from the ground, and the top of the cab seven feet and four inches. Plaintiff was standing on a box twelve or fourteen inches in height.

Defendant insists that the evidence does not show that it had any notice that the wire was low at the time of the accident, and that it is clearly shown that the wire was properly and safely erected by the two linemen who testified on the trial. If, in fact, the wire was lower at the time plaintiff sustained his injuries than when first put up by defendant, the evidence does not clearly show when it was lowered, or by what agency. An employee of the municipality testified that a short time before the accident, one witness says two or three days, he removed from the tree in the yard alluded to, two branches near the top, and that they fell upon the wire, which he had not seen until the branches struck it; but two witnesses who were in the yard at the time, and who assisted in removing the tree top from the premises, say that these

branches did not fall within six or eight feet of the wire. Since the evidence does not conclusively show that the wire had been recently lowered, it was not necessary to prove that defendant had knowledge of the height of the wires at the exact time of the accident. Plaintiff's instruction number six properly submitted to the jury the question of defendant's knowledge of the condition of the wire at the time of the accident.

Defendant contends that negligence is not proved. How long the wire had been in the position it was when plaintiff received his injuries is in dispute, and was a question for the jury. The fact is that it was less than ten feet from the surface of the street. Plaintiff was five feet eight inches tall, standing on a box twelve to fourteen inches high and the bed of the truck was three feet two inches from the pavement. In view of the facts in evidence we can not say that a case of negligence was not made out. ''The question of negligence is said to be for the jury when there is a substantial doubt as to the facts or as to the inferences to be drawn from them.'' *Hannum* v. *Hill,* 52 W. Va. 166.

Was plaintiff guilty of contributory negligence? He had been using the street regularly ever since the wire was strung across it, and had passed along that way earlier in the day, but says he had not noticed it before. The question of plaintiff's contributory negligence does not seem to have been relied upon at the trial. One of his instructions, after stating certain other facts in evidence, does tell the jury that they should find for plaintiff if he came to his injury ''without any fault on the part of said plaintiff.'' If defendant relied on the defense of plaintiff's contributory negligence, this question should have been submitted to the jury by such proper instruction as it might have requested. In *Fisher* v. *Coal Co.,* 86 W. Va. 465, it was said: ''It is not to be supposed that a traveler on a road will constantly bear in mind an overhead wire or other menace.'' At the time he was injured plaintiff was hauling a load of crated furniture and was holding some of the pieces from falling over the side of the truck. There were a number of wires across the street at various places. Plaintiff had a right to assume that the street was safe for travel, without being constantly on the

lookout for aerial obstructions like telephone wires. Contributory negligence when it depends on questions of fact and testimony, is for the jury. 10 Enc. Dig. Va. & W. Va. Rep. 419, and cases cited.

Next, it is said that the driver's negligence should bar recovery by plaintiff. The driver knew where the wire was. He said it was about two feet above the top of the cab. But he could not see plaintiff at the time of the accident, his view through a window or opening in the back of the cab being cut off by the load on the truck. The cab passed safely under the wire. If plaintiff had not been standing on the box, it is evident that he would not have been injured. The driver testified that he did not know the height of the truck, at the time, nor that plaintiff was standing on the box when injured. By defendant's instruction "H" the jury were told; "The court instructs the jury that if they believe from the evidence that Carl Burr's employee, Paul Clark, knew the dangerous condition of the defendant company's wire and failed to use reasonable care to prevent the injury to Burr, or by the exercise of reasonable care should have known such condition in time to have avoided such injury, then the negligence of Paul Clark was the proximate cause of the injury, and the jury must find for the defendant." This instruction fully covered the question of imputed negligence.

Error is assigned in the rejection of defendant's proposed instruction "G," as follows: "The court instructs the jury that even though the jury find from the evidence that the defendant company was negligent in permitting its wire to be in an unsafe condition as alleged in plaintiff's declaration, yet if they shall further believe from the evidence that Paul Clark, the driver of the truck in which plaintiff was riding, knew, or by the exercise of ordinary care would have known of the danger and should have avoided it, then the negligence of said driver prevents a recovery by the plaintiff in this action." This instruction was fully covered by instruction "H" above quoted.

Plaintiff insists that the verdict is excessive. Plaintiff was severely injured. The bones in his left arm, just above the wrist, were broken. He lost time from his work, and had to employ an extra man for two or three months. At the time

of the trial, more than a year and a half after the accident, plaintiff testified that his arm was not then as strong as before the injury, and that it still pained him when he did any heavy lifting, and interfered with his work at his regular occupation. Plaintiff was twenty-four years of age at the time of the trial, and depends on manual labor for a living. We can not say that the verdict, $1,625.00, was excessive. "In actions for damages for personal injuries sustained, the statute imposes no limitation on the amount recoverable. Generally the amount is for the jury to determine, and the only limitation which the law imposes is that the damages be fairly compensatory, and not such as to show partiality, prejudice or misconduct on the part of the jury." *Gibbard* v. *Evans,* 87 W. Va. 650.

Defendant moved for a new trial on the ground of surprise, and of after-discovered evidence. Mrs. Dickson, the lady who owned and occupied the house to which the telephone wire was attached, testified, when she was called for rebuttal, near the close of the trial, that all the limbs had been removed from the tree in her yard by her husband four or five years ago, with the exception of the top cut out just before plaintiff's injury, and that the growth of bark over the scars made would show that none of the limbs had been cut recently. After verdict defendant offered the affidavits of several persons, who swore that the scars on the tree showed that some of the limbs must have been cut off some time after Mrs. Dickson testified they were removed. This evidence could have been but cumulative of the testimony of the linemen who erected the wire in question. They testified that they attached it to a limb on the tree. And besides, the evident purpose of the evidence proposed to be offered on a new trial was to contradict the testimony of Mrs. Dickson. In *Gibbard* v. *Evans, supra,* we held: "To justify granting a new trial for after-discovered evidence, the party relying thereon must have been diligent before the verdict, the evidence must be material and not merely cumulative, and such as on a new trial ought to produce the opposite result, and it is not proposed simply to discredit or impeach a witness on the opposite side." *State* v. *Lemon,* 84 W. Va. 298; *Frymier* v. *Lorama Railroad Co.,* 76 W. Va. 96. If defen-

dant was surprised, it should have moved the court for a continuance before verdict. *Frymier* v. *Railroad Co., supra.*

We are of opinion to affirm the judgment.

*Affirmed.*