STATE OF WEST VIRGINIA

*v.*

MARY HACKER

(No. 9833)

Submitted January 28, 1947.   Decided April 1, 1947.

*Guy H. Burnside,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Ralph M. Hiner,* and *Eston B. Stephenson,* Assistant Attorneys General, for defendant in error.

LOVINS, JUDGE:

Mary Hacker complains of the judgment of the Criminal Court of Harrison County, entered upon the verdict of a

jury, in her trial on an indictment charging her with operating a house of ill fame, at No. 308 North Sixth Street in the City of Clarksburg, sentencing her to a term of one year in jail, and imposing a fine of two hundred dollars, which judgment was afterwards affirmed by the circuit court of said county.

The indictment was returned against defendant on March 7, 1945, and contains three counts: the first count charges that defendant "did unlawfully keep, set up, maintain and operate a certain house, place and building located at No. 308 North Sixth Street, in the City of Clarksburg, in said County of Harrison for the purpose of prostitution, lewdness and assignation; * * *." The second count charges that, at the same place, she "did unlawfully receive and offer, and agree to receive, a certain male person of Italian ancestry, whose name is to the Grand Jurors unknown * * * and a certain female person, whose first name is Joan, and whose last name is to the Grand Jurors unknown, * * * for the purpose of prostitution, lewdness and assignation, and did unlawfully permit said persons to remain in said house, place and building for said purpose of prostitution, lewdness and assignation; * * *." The third count charges that on another date, and at the same place, defendant "did unlawfully receive and offer, and agree to receive, Mary Jo Lacy, Betty Jane Brooks, Charles Ward, Dale Furr, and William C. Walker * * * for the purpose of prostitution, lewdness and assignation, and did unlawfully permit said persons to remain there for said purpose of prostitution, lewdness and assignation; * * *". Each of said offenses is alleged to have been committed within one year prior to the indictment.

This indictment was returned under the provisions of subsection (a) of Section 5, Article 8, Chapter 61 of the Code, as amended by Chapter 30, Acts of the Legislature, 1943, and, as amended, appearing in Michie's 1943 Code, 61-8-5. Subsection (a) makes unlawful six separate and distinct offenses. One offense is that of setting up, maintaining, or operating any house, place, building, hotel, tourist camp or other structure or part thereof, or vehicle,

trailer or other conveyance for the purpose of prostitution, lewdness or assignation; another is that of receiving, or offering or agreeing to receive any person into any house, place, building, hotel, tourist camp, or other structure, or vehicle, trailer or other conveyance for the purpose of prostitution, lewdness or assignation, or to permit any person to remain there for such purpose; another consists in letting, subletting or renting any such place, premises or conveyance to another with knowledge or good reason to know of the intention to use such place, premises or conveyance for prostitution, lewdness or assignation. Other offenses are therein defined, which, on this writ, it is unnecessary to mention.

The case was called for trial on April 16, 1945. The defendant pleaded not guilty, and also interposed a plea of former jeopardy based upon the following: On September 18, 1944, one M. C. Koester made complaint before O. Hamric, a Justice of the Peace of Harrison County, and on that complaint and on the same day, a warrant was issued charging that defendant on the 30th day of August, 1944, in said Harrison County, "did unlawfully offer to let, sublet and rent a room, place and premises to another, with knowledge and good reason to know of the intention of the lessee and rentee to use such place, room and premises for prostitution, lewdness and assignation, in violation of Section 5, Article 8, Chapter 61 of the Code of West Virginia, 1931, as amended by Acts of the Legislature, West Virginia, Regular Session, 1943, against the peace and dignity of the State." On this warrant a trial was had, and the defendant was found guilty, fined one hundred dollars, and sentenced to the county jail for a term of six months. From that finding and judgment an appeal was taken to the Criminal Court of Harrison County.

At a regular term of the said criminal court, held in the month of March, 1945, the indictment aforesaid was returned. On the 12th day of March, 1945, a general order was entered, which, it seems to be conceded, applies to the case then pending on the warrant aforesaid, and other

cases, to the effect that the State, with the assent of the court, would not prosecute the several defendants in the appeals then being dealt with, for the reason that the warrants therein had been found to be defective. It was then ordered by the court that the defendants in the said appeals should be discharged from the several complaints and warrants against them, and that they should go thereof without delay. The above-mentioned order terminated the proceedings on the warrant before the trial of defendant on the indictment aforesaid.

Defendant, relying on the proceedings before the justice, filed her plea of former jeopardy, setting up the trial before him, and judgment and sentence as aforesaid. It was averred in the plea that the Mary Hacker, named in the indictment, was the same Mary Hacker who had been arrested and convicted on the warrant issued by the justice aforesaid; that they were one and the same person, and not other and different persons; and that the misdemeanor for which she was arrested and convicted before the justice, and the misdemeanor for which she was then indicted, were based on one and the same, and not different, misdemeanors. To this plea the State filed its replication, averring that the charge against the defendant in the indictment against her in the warrant, aforesaid, had been dismissed, and that she was discharged therefrom. The criminal court rejected the plea of former jeopardy, and required defendant to go to trial upon her plea of not guilty, to which action of the court proper exceptions were taken at the time. The case was tried before a jury, and the defendant found guilty. A motion to set aside the verdict of the jury was overruled, and judgment entered thereon, as aforesaid, to all which the defendant excepted at the time.

Defendant relies in particular upon two assignments of error, although she sets up twenty-three such assignments. The first assignment argued is the failure of the indictment to charge defendant with knowingly committing the acts therein charged. This question has been

maturely considered, and elaborately discussed, in the case of *State of West Virginia* v. *Tracy Taylor*, 42 S. E. 2d 549, decided at this term, and it is unnecessary for us to further discuss it in this opinion. However, it not amiss to say, that, as to the first count of the indictment, there is the direct charge that the defendant "did unlawfully set up, maintain and operate a certain place and building * * * for the purpose of prostitution, lewdness and assignation." Certainly it was not necessary to charge that defendant knowingly did so. In law, any sane person is presumed to know what he does, and is held responsible for the necessary and probable consequences of his act. The second and third counts of the indictment directly charge that defendant "did unlawfully receive and offer and agree to receive" a certain person for purposes clearly set out in the indictment, both of which positive acts on the part of defendant, if established by proof, made her amenable to the fine and imprisonment provided for by the statute. We are of the opinion, therefore, that the indictment, and each count thereof were sufficient, and closely, if not literally, follow the language of the statute on which the indictment was based.

The second question upon which stress is laid, is that the court erred in overruling the plea of former jeopardy. This, too, is fully discussed in *State* v. *Taylor, supra,* and also *State of West Virginia* v. *Dennis J. Burke,* 42 S. E. 2d 544, decided at this term. However, this further statement may be made: the warrant on which defendant was convicted before a justice on September 20, 1944, charged that defendant "did unlawfully offer to let, sublet and rent a room, place and premises to another with knowledge and good reason to know of the intention of the lessee and rentee, to use such place, room and premises for prostitution, lewdness and assignation"; which is one of the offenses defined in subsection (a) of Code, 61-8-5, as amended. The language employed in the warrant corresponds with that contained in said subsection, but it did not define the same offenses, or either of them, as those charged in the indictment, but a separate and distinct of-

fense, so defined and set up in the statute. But if it were not a separate and distinct offense, the act of defendant in appealing from the judgment of the justice, even if there had been no dismissal of the charge contained in the warrant, operated to permit indictment of defendant for the same offense, and her trial upon such indictment at any time before trial on the warrant, without placing her twice in jeopardy. This was distinctly held in the case of *State* v. *Peleski,* 98 W. Va. 224, 126 S. E. 924. It was there held: "Where one charged with an offense of which a justice of the peace, by Section 32 of Chapter 32-A of the Code, has concurrent jurisdiction with the circuit court, appeals to the circuit court from a judgment of the justice rendered against him, he cannot plead such trial and conviction and the pendency of his appeal in the circuit court, in abatement of a prosecution on an indictment subsequently returned by the grand jury against him for the same offense." Here, of course, both the criminal court, and a justice of the peace of Harrison County, had concurrent jurisdiction to try the offense dealt with in the case at bar. Code, 61-8-5 (d), as amended. See also *State* v. *Taylor, supra,* and *State* v. *Burke, supra.*

The State offered seven instructions, to each of which defendant made a general objection. Under Rule VI-e, 116 W. Va. lxii, this Court will not consider other than specific objections to an instruction. This rule applies to the trial of a person charged with a misdemeanor, and, therefore, we cannot consider the general objections so made. The defendant offered thirteen instructions, nine of which were given. One of the instructions refused was a peremptory instruction to find defendant not guilty, and was properly refused. Defendant's instruction No. 3, refused by the court, was largely covered by other instructions, but a portion thereof would have told the jury that the result of the evidence must be to exclude every reasonable hypothesis of innocence, and be consistent only with the guilt of defendant; and that the jury was not at liberty to guess, and that where the whole evidence was susceptible of two reasonable interpretations, one of

which is consistent with the innocence of the defendant, they cannot arbitrarily adopt an interpretation which incriminates her. The instruction was refused upon the general theory that it mentioned only one of the two possible interpretations of the evidence, which the jury could adopt, whereas the jury should have been instructed that either of such interpretations of the evidence could be considered. We can see no harmful result to defendant from the refusal to give this instruction, inasmuch as the jury was properly instructed on the presumption of innocence and reasonable doubt, and for this reason, if for no other, there was no error in its refusal. Instructions Nos. 9 and 10 would have told the jury, in effect, that, before defendant could be convicted, it was necessary to prove that Koester rented or leased from defendant a room with intention on his part that other persons should use such place or premises for prostitution, lewdness or assignation. These instructions do not fit this case, because it was not tried on the charge that defendant had rented or leased premises for the purpose of prostitution, but on the charge that she had kept, set up and maintained a house of prostitution, or had received in the premises owned by her persons for the purpose of prostitution. The court properly rejected these instructions. Defendant's instruction No. 11, refused by the court, would have told the jury that it was improper for it to consider any evidence which had been adduced tending to establish the general reputation of the home of defendant as a place of prostitution. This instruction, if given would have been in clear conflict with subsection (d) of Code, 61-8-5, as amended, and was properly refused.

We do not deem it necessary to discuss further the various other points of error assigned, as all of them appear to have been assigned and passed upon in the cases of *State* v. *Taylor, supra,* and *State* v. *Burke, supra.*

This brings us to a consideration of the evidence in the case. Defendant had maintained a residence at No. 308 North Sixth Street, in the City of Clarksburg, for a num-

ber of years. By her own admission, she had, more than once, been arrested for keeping a house of prostitution, and had posted a cash deposit for her appearance to answer such charge, and had forfeited the money as a fine without making any appearance. Two persons acquainted with the reputation of the house at No. 308 North Sixth Street in Clarksburg as a place of prostitution, lewdness and assignation, testified that it was bad.

Evidence tending to show two specific offenses appears in the record: First, that M. C. Koester, and two young men of Italian ancestry, visited the premises of defendant shortly after midnight on August 30, 1944; that they were admitted by a girl called "Edna," and were invited into a living-room where there was a coin operated music box; that at the left of the music box was a stairway leading to rooms on the second floor, and at the foot of the stairway was a door covered by a curtain; that at this time there were two girls sitting in the living-room, and a third girl, named Mary Jo Lacy, was coming down the stairs with two young boys, about seventeen years of age; that one of the Italian boys, who had come with Koester, made a date with Mary Jo Lacy to go to a room upstairs, and the two went to the foot of the stairs, at the room with the curtain over it, and the boy handed money through the curtain to a woman called "Mary," who was on the opposite side of the curtain at that time; that they then went upstairs, and while away, "Edna" asked Koester if he wished a date, and told him the price was $3.00; and when asked by Koester whom you paid, she said, "Mary." "Edna" also told Koester that she had to have the pay when she went upstairs, or the madam would not allow the girls to go up. Koester then paid her in order to find out "Mary's" identity, but, apparently, was unable to do so. In about thirty or thirty-five minutes Mary Jo Lacy and the Italian boy came downstairs, and Koester and the two boys left the house. On this information Koester made the complaint on which the warrant was issued, and defendant was arrested and taken before O. Hamric, justice of the peace.

Second, defendant was arrested by Troopers Perrine and Williams, a few days after the event narrated above, on the warrant sworn out by Koester. When they went to defendant's premises they found there a sailor, who called himself "Mark Stewart," who was sitting in the kitchen drinking beer, and had his uniform off and was wearing one of the girls' kimonas or some kind of housecoat; that a girl, wearing slacks, came into the kitchen, and said that the sailor was getting his clothes pressed, although no ironing board was in sight; that two or three men were in the living-room talking to another girl. One of the troopers, Perrine, testified that he asked the girl in the kitchen where "Mary" was, and was told she was upstairs; that they went upstairs and found "Mary" in room No. 2, and that after a delay of from three to five minutes the door to that room was opened and an older man by the name of "Walker" was seen sitting on the bed, and Mary Hacker was standing near the door. The people arrested that night gave their names as Mary Hacker, Mary Jo Lacy, Betty Jane Brooks, Charles Ward, Dale Furr and William C. Walker, presumably the same persons named in the indictment. Mary Hacker admitted at the time of her arrest that she operated and maintained the house, where the search and arrests were made.

Defendant vigorously denied that she was maintaining a place of prostitution, and Mary Jo Lacy denied any wrongdoing. The other persons found on the Hacker premises on the night of the arrest did not testify.

Upon the conflicting evidence above stated the jury determined the issue of fact against defendant and found her guilty. This Court would not be justified in setting aside the verdict, as the evidence, introduced by the State and believed by the jury, was sufficient to show defendant's guilt beyond all reasonable doubt, and, though conflicting, it was the peculiar province of the jury to resolve that conflict. The controlling principle is aptly stated in the language following: "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary

to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." *State* v. *Bowles,* 117 W. Va. 217, 220, 185 S. E. 205, 207. See *State* v. *Holmes,* 125 W. Va. 97, 23 S. E. 2d 61; *State* v. *Gunter,* 123 W. Va. 569, 575, 17 S. E. 2d 46; *State* v. *Barkoski,* 96 W. Va. 265, 122 S. E. 654; *State* v. *Price,* 94 W. Va. 644, 119 S. E. 874, as bearing on this question.

For the reasons stated herein the judgments of the Criminal and Circuit Courts of Harrison County are affirmed.

*Affirmed.*