STATE OF WEST VIRGINIA

*v.*

EDWARD SPRADLEY

(No. 10682)

Submitted September 14, 1954. Decided October 19, 1954.

*Clay S. Crouse, Thomas Canterbury,* for plaintiff in error.

*John G. Fox,* Attorney General, *George G. Burnette, Jr.,* Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

At the Regular October 1953 Term of the Criminal Court of Raleigh County the defendant, Edward Spradley, was indicted, tried and by a jury found guilty of a felony.

The offense for which he was indicted was that of receiving stolen goods consisting of two automobile tires, four fan belts, seventeen packages of cigarettes and a coin box containing $2.54, all of the total value of $68.69, which the defendant knew and had reason to believe had been stolen from the owner.

Motions of the defendant to set aside the verdict and grant him a new trial and in arrest of judgment were overruled, and by final judgment entered November 4, 1953, the defendant was sentenced to confinement in the penitentiary of this State for a term of not less than one year or more than ten years. On February 8, 1954, the Circuit Court of Raleigh County refused to grant a writ of error to the foregoing judgment and to the judgment of the circuit court the defendant prosecutes this writ of error.

During the early morning of Wednesday, July 15, 1953, Earl Long, a resident of Beckley, broke and entered into the Ashland Service Station in Beckley and stole and removed the articles of property in connection with which the defendant was indicted and convicted.

As a witness for the State upon the trial of the defendant, Long testified that after he stole the property he took it to the house in which the defendant was living, located a short distance from the service station, knocked on the front door, was admitted by the defendant, told him that he had broken into the service station and had taken the articles and then placed them on the floor in one of the two rooms of the house; that one of the rooms was a bedroom; that there was only one bed in the bedroom; that a woman whom Long assumed was the wife of the defendant, was in the bed; and that Long left the property in the bedroom. He also testified that before he broke into the service station he had told the defendant that he would get some tires; that the defendant knew he was going to steal them; that there was an arrangement between them that Long would steal the tires; that the defendant would sell them; that Long and the defendant would divide the money; that after Long brought the property to the house

and left it in the bedroom, the defendant went to the nearby home of his father where his brother was living to see if his brother would buy the tires; that after the defendant left the house Long went back to the service station and again entered it through a door which he had left unlocked; that while he was there he was arrested by the police; that he told the officers he had stolen the property and where he had taken it; that the police then took him back to the defendant's house; that after the defendant returned to the house from the place where his brother lived the defendant was arrested; that he and the defendant were then taken to jail by the officers; and that after the officers brought him from the service station to the house where the defendant lived Long saw the officers bring from the house the property that he had stolen.

Long further testified that about six or seven o'clock of the same evening and before he stole the property he visited the house in which the defendant lived; that he and the defendant were together in the upper or second story of the house which was occupied by two families; that he and some of the members of the two families drank liquor on that occasion but that the defendant who was present did not drink any liquor; that he and the defendant remained there about one hour; that later that evening, after dark and after he and the defendant came downstairs, he told the defendant "about some tires"; that the defendant told Long he could sell them to his brother; and that Long had visited and had been in the second story of the house in which the defendant lived, and had seen the defendant, on the Sunday before he stole the tires.

One of the arresting officers testified that he took Long from the service station to the house occupied by the defendant; that there were three rooms in the portion of the house located on the first floor where the defendant lived; that he found the coin box in one of the rooms and the other arresting officer, who was absent and did not

testify at the trial, found the tires and the fan belts in another room; and that the officers returned the property which they had found in the house to the service station.

The defendant, who testified in his own behalf, stated that he was unmarried at the time of his arrest; that he was then renting and occupying a bedroom in the first story of the house in which he was residing; that he rented the room from one of the part owners of the house, a woman named Baker, at the rate of $8.00 per week; that there were four rooms on the first floor of the house, two bedrooms, a kitchen and a living room; that the defendant occupied one bedroom and the woman, from whom he rented, occupied the other bedroom; that he occupied his bedroom alone; that he had undressed and was in bed when Long knocked on the door; that he got up, got a pistol, went to the door and admitted Long; that he was not well acquainted with Long and had not seen him for three or four months before he came to his door and had seen him only once or twice during the previous six or seven months; and that he did not drink liquor and had not drunk liquor with Long or in his presence at any time.

The defendant admitted that he opened the front door in response to Long's knock and permitted him to come into his bedroom but he denied that Long had any tires or cigarettes with him at that time. He stated that he did not see any of the stolen property and did not know that Long had stolen it. He admitted that Long told him he had some tires; that, not knowing that they were stolen, he agreed to try to sell them to his brother; that he dressed, left the house through another or rear door, and went to the home of his father where his brother was staying and asked his brother if he would buy the tires; that his brother would not buy them; that he returned to the house in a few minutes; that when he returned Long and two policemen were there; that he was arrested and he and Long were taken to jail in separate automobiles; that he did not see any of the stolen property at the house and saw the tires for the first time when they were taken from one of the police cars and returned to the service station.

He also denied that he had seen Long on the Sunday before the tires were taken by him or that he had seen him at any time during the afternoon or the evening of the day they were stolen. He stated that from about four thirty o'clock until about seven thirty o'clock in the afternoon and the evening of that day he was at a baseball field which was located a short distance from and in full view of his father's home; that during that time he was in charge of and sponsored a little league baseball team which played a game against another team sponsored by Brown Hugo Payne, an attorney at law, of Beckley; that after the game he went to his father's home where he ate his supper; that he remained at his father's home from about eight o'clock until about ten thirty o'clock that night; and that he then went to his room and retired for the night and was in bed when Long knocked at his door.

As to his presence at the baseball field the defendant is corroborated by the testimony of Attorney Payne and his father, Mose Spradley, and as to his presence at his father's home he is corroborated by the testimony of his father. The defendant also testified that he was not present with Long in the second story of the house which was occupied by the two families and in this he is corroborated by a member of each of the families who testified that Long had never been in the second story of the house occupied by them. The defendant also denied that Long had ever told him that he intended to steal or had stolen any of the property.

The Baker woman testified that she and her brother owned the house in which the defendant resided; that she rented a room to the defendant for which he paid $8.00 a week; that she heard Long knock on the door of the room occupied by the defendant; that she was in bed at the time; that she remained in bed; that the defendant and Long talked to each other; that the defendant then went out the rear door of the house; that Long stood in the kitchen and then came through her bedroom; that there were four rooms on the first floor of the house; that

she did not see what the defendant and Long were doing but that she heard them; that she did not see Long or the defendant take any tires through her bedroom or to the kitchen; that she did not see any coin box or cigarettes at any time and did not see the tires until one of the officers brought them from the kitchen; that she could have seen Long and the defendant if she had looked but that she did not look; that she remained in bed from the time Long came to the house until after the officers left; that when the defendant left the house before he was arrested he was gone for a period of about five or ten minutes and then returned; that she occupied a separate bedroom from the bedroom which she rented to the defendant; and that she was the only woman in the apartment on the first floor of the house on the night the defendant was arrested.

In rebuttal the State offered the testimony of Katherine Long, the wife of Earl Long, who testified that at about five o'clock in the afternoon of the day that Long stole the property the defendant and Long and Emmett Jasper were together at her home and that they later left together in an automobile driven by Jasper. In surrebuttal the defendant denied that he had seen Jasper during the afternoon in question. The Baker woman and one other witness also testified in surrebuttal that they had seen Jasper and Long together in an automobile about five o'clock in the afternoon of the day that the property was stolen and that the defendant was not present when they saw Long and Jasper together. The Baker woman stated that another man, whom she identified as Charles Jones, was with Jasper and Long at the time she saw them.

The trial was held and the verdict of the jury was returned on October 19, 1953. After the defendant had testified in surrebuttal but before the testimony of the Baker woman and the other witness was offered in surrebuttal, the attorney for the defendant informed the court that the defendant wanted to use Emmett Jasper as a witness and stated that he had expected the State to produce him

as a witness but that he was willing to proceed with the trial with the expectation that Jasper would appear as a witness about "four-thirty" that afternoon. There was no request in behalf of defendant, however, that the trial be suspended or continued for sufficient time to enable the defendant to produce Jasper as a witness, and there was no request for the issuance of a subpoena for either Emmett Jasper or Charles Jones.

On November 4, 1953, as one of the grounds assigned by the defendant in support of his motion to set aside the verdict and grant him a new trial, the defendant offered to submit as newly discovered evidence, which he could prove by Jasper and Jones, that at about five o'clock in the afternoon of the day that Long stole the goods from the service station Jasper and Jones were the two men who came to Long's home and later left with him in an automobile and that the defendant was not present at that time. The defendant also asserted that after the verdict had been returned he had discovered and could prove by designated witnesses that the testimony of Katherine Long, the wife of Earl Long, to the effect that the defendant was present at the home of Earl Long with Long and Emmett Jasper and left with them in an automobile about five o'clock that afternoon was false; that a warrant charging Katherine Long with perjury, upon the complaint of Mose Spradley, was issued by a justice of the peace on October 29, 1953; and that, after a hearing before the justice on October 31, 1953, she was held under bond in the sum of $500.00 to await the action of the grand jury on a charge of perjury.

To support his motion for a new trial the defendant filed his affidavit stating that he did not discover and could not have discovered the foregoing evidence before the trial by the exercise of reasonable diligence; that such evidence is material and on another trial ought to produce an opposite result upon the merits; that such evidence is not merely cumulative, corroborative or collateral; and that all such evidence is relevant to the merits of the case.

The defendant also filed the affidavit of Mose Spradley with respect to the falsity of the testimony of Katherine Long and the pending charge of perjury against her, and the joint affidavit of Emmett Jasper and Charles Jones with respect to their presence with Earl Long at his home and in the automobile during the afternoon of the day the property was stolen by Long and the absence of the defendant at that time.

The trial court made the foregoing affidavits a part of the record but, as heretofore pointed out, overruled the motion of the defendant and entered judgment upon the verdict of the jury.

The errors assigned for reversal of the judgment of the criminal court and the judgment of the circuit court are: (1) The verdict is not supported by the evidence; and (2) the defendant is entitled to a new trial upon the ground of after discovered evidence.

The first contention of the defendant that the verdict of the jury is not supported by the evidence is entirely devoid of merit. The weight of the evidence and the credibility of the witnesses are for the jury. The jury was justified in believing the testimony of Earl Long that the defendant knew, from information imparted to him by Long, that the property had been stolen when Long brought it into the room occupied by the defendant, which he permitted Long to enter, or when the property or some of it was placed in the room where the defendant was at the time, or in the bedroom occupied by the Baker woman, or in the kitchen where, according to the testimony of one of the arresting officers, the tires were found and retaken by the other arresting officer. Though the defendant denied that he knew the property was stolen or that he saw it before it was repossessed by the arresting officers and returned to the service station from which it was stolen, he admitted that he attempted unsuccessfully to sell it to his brother and that he dressed and left his room for that purpose shortly after Long entered it. Despite the statement of the defendant that he did not see Long have any property when Long entered the room, his admitted at-

tempt to sell the property, in the circumstances established by the evidence, shows that he had control of it to the extent that he could have taken and delivered it to his brother if his brother had decided to buy it. This control of the property, while it remained in any of the rooms in the first story of the house to each of which the defendant had free access, constituted possession by him of the property which Long stole and brought to the section of the house in which the defendant lived, within the meaning of the statute creating the offense, Section 18, Article 3, Chapter 61, Code, 1931. From the evidence the jury had the right to believe beyond a reasonable doubt, as the verdict indicates it did believe, that the defendant was guilty of the offense charged against him in the indictment. The evidence justifies his conviction of that offense; and the finding of the jury of the guilt of the defendant will not be disturbed by this Court. "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." Point 1, syllabus, *State v. Bowles,* 117 W. Va. 217, 185 S. E. 205; point 3, syllabus, *State v. Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; point 1, syllabus, *State v. Reppert,* 132 W. Va. 675, 52 S. E. 2d 820; point 2, syllabus, *State v. Hacker,* 130 W. Va. 91, 42 S. E. 2d 559. See also *State v. Taylor,* 130 W. Va. 74, 42 S. E. 2d 549; *State v. Holmes,* 125 W. Va. 97, 23 S. E. 2d 61; *State v. Gunter,* 123 W. Va. 569, 17 S. E. 2d 46; *State v. Barkoski,* 96 W. Va. 265, 122 S. E. 654; *State v. Price,* 94 W. Va. 644, 119 S. E. 874; *State v. McLaughlin,* 91 W. Va. 654, 114 S. E. 278; *State v. Cook,* 81 W. Va. 686, 95 S. E. 792; *State v. Stewart,* 63 W. Va. 597, 60 S. E. 591; *State v. Henry,* 51 W. Va. 283, 41 S. E. 439. A new trial will not be granted in a criminal case, on the ground of insufficiency of the evidence, when the verdict against the defendant is based

on conflicting oral testimony and the credibility of witnesses is involved, *State* v. *Stowers,* 66 W. Va. 198, 66 S. E. 323; or when the verdict is supported by substantial evidence. *State* v. *Livingston,* 110 W. Va. 21, 156 S. E. 842.

The second contention of the defendant that he is entitled to a new trial on the ground of newly discovered evidence is likewise without merit. The affidavit of the defendant fails to state facts which show that, by the exercise of due diligence, he could not have discovered before the trial, or could not have produced at the trial, the evidence which he states would have been given by Jasper and Jones if they had testified as witnesses, and by his father, Mose Spradley, who testified at the trial that the defendant was at the baseball field during the afternoon of the day the property was stolen until about seven o'clock and that he then came to the home of Mose Spradley and remained there until between ten o'clock and eleven o'clock that night. After Katherine Long gave her testimony in rebuttal the defendant should have endeavored to obtain the attendance of Jasper and Jones, who presumably were in or near Beckley and available as witnesses at the time, by causing a subpoena to be issued requiring them to appear forthwith, and should have requested the court to suspend the trial for a reasonable time to enable them to be present in court. The defendant, however, did not choose to pursue either course.

It is clear that the new evidence was merely cumulative concerning the absence of the defendant when, according to the testimony of Katherine Long, he, Long and Jasper were at Long's home and left together in an automobile during the afternoon preceding the night the property was stolen. The new evidence is also not such evidence as ought to produce an opposite result upon another trial on the merits. Whether the defendant was or was not with Long and Jasper during the afternoon before the property was stolen is not of controlling force or importance for the reason that Long could have told the defendant, when he brought the property to the house in which the defendant lived, that it had been stolen. The jury believed Long's

testimony that he told the defendant when he entered the room that he had stolen the property and, by its verdict, the jury found that Long so informed the defendant at that time. The primary purpose of the new evidence was to impeach and discredit the testimony given by the witness Katherine Long. Without the testimony of Katherine Long, or the proposed new evidence of Jasper, Jones and Mose Spradley, there was sufficient evidence to justify the jury in finding that the defendant knew that the property which Long brought to the house in which the defendant resided was stolen property; and the proposed new evidence was not controlling upon the issue of the guilt or the innocence of the defendant.

The rule is well established that a new trial is rarely granted on the ground of after discovered evidence and that a new trial on that ground is granted only "under very special circumstances." *State* v. *Poe,* 69 W. Va. 260, 71 S. E. 177; *State* v. *Stowers,* 66 W. Va. 198, 66 S. E. 323; *Carder* v. *Bank of West Virginia,* 34 W. Va. 38, 11 S. E. 716; *Brown* v. *Speyers,* 20 Gratt. 296.

This Court has consistently held that "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Point 1, syllabus, *Halstead*

v. *Horton*, 38 W. Va. 727, 18 S. E. 953; point 11, syllabus, *Phenix Fire Insurance Company* v. *Virginia-Western Power Company*, 81 W. Va. 298, 94 S. E. 372. See also *Stike* v. *Virginian Railway Company*, 114 W. Va. 832, 174 S. E. 418; *Gray and Wayman* v. *Powell*, 102 W. Va. 440, 136 S. E. 40; *Cavender* v. *The Cline Ice Cream Company*, 101 W. Va. 3, 131 S. E. 862; *Burr* v. *The Limestone Telephone Company*, 97 W. Va. 508, 125 S. E. 335; *State* v. *Edwards*, 95 W. Va. 239, 120 S. E. 516; *Flat Top National Bank* v. *Parsons*, 90 W. Va. 51, 110 S. E. 491; *Gibbard* v. *Evans*, 87 W. Va. 650, 106 S. E. 37; *State* v. *Lemon*, 84 W. Va. 25, 99 S. E. 263; *Wadkins* v. *Digman*, 82 W. Va. 623, 96 S. E. 1016; *Jacobs* v. *Williams*, 67 W. Va. 377, 67 S. E. 1113; *Stewart* v. *Doak Brothers*, 58 W. Va. 172, 52 S. E. 95; *Sisler* v. *Shaffer*, 43 W. Va. 769, 28 S. E. 721; *Carder* v. *Bank of West Virginia*, 34 W. Va. 38, 11 S. E. 716; *Swisher* v. *Malone*, 31 W. Va. 442, 7 S. E. 439; *Bloss* v. *Hull*, 27 W. Va. 503; *Dower* v. *Church*, 21 W. Va. 23; *Varner* v. *Core*, 20 W. Va. 472; *The State of West Virginia* v. *Williams*, 14 W. Va. 851; *State* v. *Betsall*, 11 W. Va. 703; *Gillilan* v. *Ludington*, 6 W. Va. 128; *Nadenbousch* v. *Sharer*, 4 W. Va. 203. If any of the foregoing five essential requirements is not satisfied or complied with a new trial will not be granted on the ground of newly discovered evidence. *Butts* v. *Butts*, 81 W. Va. 55, 94 S. E. 360. Here due diligence to discover the new evidence at or prior to the trial is not established; the new evidence is merely cumulative; it is not such as ought to produce an opposite result upon a new trial on the merits; and its primary purpose is to discredit or impeach the testimony of a witness produced by the State. For these reasons the new evidence was not sufficient to entitle the defendant to a new trial and the action of the trial court in refusing to grant a new trial on the ground of newly discovered evidence was plainly right.

As no prejudicial error appears in the trial of the case, the judgment of the circuit court and the judgment of the criminal court are affirmed.

*Affirmed.*